**No. 25-2121(L)**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

MICHAEL JACKSON, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

v.

THOMSON REUTERS AMERICA CORPORATION,

*Defendant-Appellee.*

On Appeals from the United States District Court
for the Northern District of West Virginia
No. 1:24-cv-00102-MFU (Hon. Michael F. Urbanski)

## RESPONSE BRIEF OF APPELLEES

<table>
<tr>
<td>

Robert C. Collins, III
LATHAM & WATKINS LLP
330 North Wabash Ave., Suite 2800
Chicago, IL 60611
(312) 876-7700

Patricia M. Bello
LEWIS BRISBOIS BISGAARD & SMITH
LLP
707 Virginia Street, East, Suite 1400
Charleston, WV 25301
(304) 553-0166

March 3, 2026

</td>
<td>

Samir Deger-Sen
Nikita Kansra
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-4619
samir.deger-sen@lw.com

Jennifer C. Archie
Ruth Hirsch
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

</td>
</tr>
</table>

*Counsel for Appellees (in No. 25-2124)*
*PeopleConnect, Inc.; Intelius LLC; Pubrec, LLC; The Control Group*
*Media Company, LLC; Instant Checkmate, LLC; Truthfinder, LLC*

*(additional counsel on signature page)*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)

- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.

- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)

- Any corporate amicus curiae must file a disclosure statement.

- Counsel has a continuing duty to update the disclosure statement.

No.  25-2124      Caption:  Michael Jackson v. PeopleConnect, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

 PeopleConnect, Inc.
(name of party/amicus)

who is         Appellee          , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?
                                                     ___ YES  _X_  NO

2.    Does party/amicus have any parent corporations?        _X_ YES  ___ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      PeopleConnect Holdings, Inc.
      PCHI Parent, Inc.

i

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?          ___ YES  _X_ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ___ YES  _X_ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)
                                                                    ___ YES  _X_ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?          ___ YES  _X_ NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?
                                                                    ___ YES  _X_ NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.


Signature:  _/s/ Samir Deger-Sen_          Date:  _March 3, 2026_

Counsel for:  _PeopleConnect, Inc._

ii

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)

- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.

- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)

- Any corporate amicus curiae must file a disclosure statement.

- Counsel has a continuing duty to update the disclosure statement.

No.  25-2124        Caption:  Michael Jackson v. PeopleConnect, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Intelius LLC
(name of party/amicus)

who is        Appellee        , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?
   ___ YES  _X_ NO

2. Does party/amicus have any parent corporations?    _X_ YES  ___ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   PubRec Holdings, Inc.
   PCHI Parent, Inc.

iii

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?         ___ YES  _X_ NO
     If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?         ___ YES  _X_ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)
                                                          ___ YES  _X_ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?        ___ YES  _X_ NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?
                                                          ___ YES  _X_ NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.


Signature:  _/s/ Samir Deger-Sen_          Date:  _March 3, 2026_

Counsel for:  _Intelius LLC_

iv

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)

- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.

- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)

- Any corporate amicus curiae must file a disclosure statement.

- Counsel has a continuing duty to update the disclosure statement.

No. __25-2124__     Caption: __Michael Jackson v. PeopleConnect, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__PubRec, LLC__
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?
   ___ YES _X_ NO

2. Does party/amicus have any parent corporations? _X_ YES ___ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   PubRec Holdings, Inc.
   PCHI Parent, Inc.

v

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?          ___ YES  _X_ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ___ YES  _X_ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)
                                                       ___ YES  _X_ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?          ___ YES  _X_ NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?
                                                       ___ YES  _X_ NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:  _/s/ Samir Deger-Sen_          Date:  _March 3, 2026_

Counsel for:  _PubRec, LLC_

vi

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)

- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.

- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)

- Any corporate amicus curiae must file a disclosure statement.

- Counsel has a continuing duty to update the disclosure statement.

No. __25-2124__      Caption: __Michael Jackson v. PeopleConnect, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

 The Control Group Media Company LLC
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?
                                                        ___ YES _X_ NO

2.    Does party/amicus have any parent corporations?      _X_ YES ___ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      PubRec Holdings, Inc.
      PCHI Parent, Inc.

vii

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ___ YES  _X_ NO

If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ___ YES  _X_ NO

If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)     ___ YES  _X_ NO

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?     ___ YES  _X_ NO

If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?     ___ YES  _X_ NO

If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:  _/s/ Samir Deger-Sen_       Date:  _March 3, 2026_

Counsel for:  _The Control Group Media Company LLC_

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)

- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.

- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)

- Any corporate amicus curiae must file a disclosure statement.

- Counsel has a continuing duty to update the disclosure statement.

No. __25-2124__      Caption: __Michael Jackson v. PeopleConnect, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Instant Checkmate, LLC__
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?
                                                      ___ YES _X_ NO

2.  Does party/amicus have any parent corporations?      _X_ YES ___ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    PubRec Holdings, Inc.
    PCHI Parent, Inc.

ix

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?          ___ YES  _X_ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ___ YES  _X_ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)          ___ YES  _X_ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?          ___ YES  _X_ NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?          ___ YES  _X_ NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:  _/s/ Samir Deger-Sen_          Date:  _March 3, 2026_

Counsel for:  _Instant Checkmate, LLC_

x

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases.  (All parties to the action in the district court are considered parties to a mandamus case.)

- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.

- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity.  (See question 7.)

- Any corporate amicus curiae must file a disclosure statement.

- Counsel has a continuing duty to update the disclosure statement.

No.  25-2121          Caption:  Michael Jackson v. Thomson Reuters America Corporation

Pursuant to FRAP 26.1 and Local Rule 26.1,

 Thomson Reuters America Corporation
(name of party/amicus)

who is      Appellee          , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?
                                                            ___ YES  _X_ NO

2.    Does party/amicus have any parent corporations?      _X_ YES  ___ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      The parent corporation of Thomson Reuters America Corporation is LiveNote Technologies Limited, a company organized under the laws of England and Wales. Thomson Reuters America Corporation and LiveNote Technologies Limited are indirect and wholly owned subsidiaries of Thomson Reuters Corporation, a publicly held corporation.  There are no intermediate parent

xi

corporations or subsidiaries of Thomson Reuters America Corporation or LiveNote Technologies Limited that are publicly held.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    __X__ YES    ___ NO
    If yes, identify all such owners:

    Thomson Reuters Corporation, which is a publicly traded corporation, is an indirect parent of Thomson Reuters America Corporation.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ___ YES  _X_ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)
    ___ YES  _X_ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ___ YES  _X_ NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?
    ___ YES  _X_ NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:  /s/ *Michael Berry*          Date:  March 3, 2026

Counsel for:   Thomson Reuters America Corporation

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases.  (All parties to the action in the district court are considered parties to a mandamus case.)

- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.

- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity.  (See question 7.)

- Any corporate amicus curiae must file a disclosure statement.

- Counsel has a continuing duty to update the disclosure statement.

No.  _25-2122_          Caption:  _Michael Jackson v. Whitepages, Inc._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Whitepages, Inc._
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?
    ___ YES  _X_  NO

2.  Does party/amicus have any parent corporations?        ___ YES  _X_  NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?        ___ YES  _X_  NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?        ___ YES  _X_  NO

xiii

If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)

   ___ YES  _X_ NO

   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?    ___ YES  _X_ NO

   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?

   ___ YES  _X_ NO

   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:  /s/ *Natalie C. Schaefer*      Date:  March 3, 2026

Counsel for:  Whitepages, Inc.

xiv

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)

- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.

- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)

- Any corporate amicus curiae must file a disclosure statement.

- Counsel has a continuing duty to update the disclosure statement.

No.  25-2123          Caption:  Michael Jackson v. Thryv, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

 Thryv, Inc.
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?
                                                                           ___ YES  X  NO

2.    Does party/amicus have any parent corporations?          X  YES  ___ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      Thryv Holdings, Inc. is the parent corporation of Thryv, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?          X  YES  ___ NO
      If yes, identify all such owners:

      Thryv Holdings, Inc., a corporation formed under the laws of Delaware, is the only publicly-held corporation that owns 10% or more of Thryv, Inc.

xv

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                                              ___ YES  _X_ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)
                                                                            ___ YES  _X_ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?          ___ YES  _X_ NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?
                                                                            ___ YES  _X_ NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:  /s/ *Dwight M. Francis* Date:  March 3, 2026

Counsel for:  Thryv, Inc.

xvi

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)

- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.

- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)

- Any corporate amicus curiae must file a disclosure statement.

- Counsel has a continuing duty to update the disclosure statement.

No.  25-2125          Caption:  Michael Jackson v. LexisNexis Risk Solutions, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

 LexisNexis Risk Solutions, Inc.
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?
                                                        ___ YES  _X_ NO

2.    Does party/amicus have any parent corporations?          _X_ YES ___ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      LexisNexis Risk Solution Inc. is a wholly owned subsidiary of LexisNexis Risk Holdings Inc.

      LexisNexis Risk Holdings Inc. is a wholly owned subsidiary of RELX Inc. RELX Inc. is a wholly owned subsidiary of RELX Overseas Holding Limited. RELX Overseas Holding Limited is a wholly owned subsidiary of RELX (Holdings) Limited.  RELX (Holdings) Limited is a wholly owned subsidiary

xvii

of RELX Group plc, which is owned by RELX PLC (LSE: REL; NYSE: RELX).

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?          X  YES ___ NO

If yes, identify all such owners:

LexisNexis Risk Solution Inc. further states that it is a wholly owned subsidiary of LexisNexis Risk Holdings Inc. LexisNexis Risk Holdings Inc. is a wholly owned subsidiary of RELX Inc. RELX Inc. is a wholly owned subsidiary of RELX Overseas Holding Limited. RELX Overseas Holding Limited is a wholly owned subsidiary of RELX (Holdings) Limited. RELX (Holdings) Limited is a wholly owned subsidiary of RELX Group plc, which is owned by RELX PLC (LSE: REL; NYSE: RELX).

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ___ YES  X  NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)          ___ YES  X  NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?          ___ YES  X  NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?          ___ YES  X  NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:  /s/ *Bruce M. Jacobs*          Date:  March 3, 2026

Counsel for:  LexisNexis Risk Solutions, Inc.

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENTS ...................................................................i

TABLE OF AUTHORITIES ............................................................... xxii

ISSUES PRESENTED.................................................................................1

INTRODUCTION ........................................................................................1

STATEMENT OF THE CASE.....................................................................3

    A.    Factual Background..........................................................................3

        1.    Historical Availability And Importance Of Home Addresses And Phone Numbers...................................................3

        2.    West Virginia's Daniel's Law .......................................................4

        3.    Other Versions of Daniel's Law ...................................................8

    B.    Procedural History...........................................................................9

        1.    This Lawsuit...................................................................................9

        2.    The District Court's Decision ......................................................10

SUMMARY OF THE ARGUMENT .........................................................13

STANDARD OF REVIEW ........................................................................16

ARGUMENT .............................................................................................17

I.    DANIEL'S LAW IS SUBJECT TO STRICT SCRUTINY .........................17

    A.    Daniel's Law Is A Content-Based Speech Restriction Subject To Strict Scrutiny...............................................................................17

    B.    Plaintiff's Arguments For Applying Lower Scrutiny All Fail............20

        1.    Daniel's Law Regulates "Speech"...............................................20

        2.    Daniel's Law Restricts Speech Based On Its Content..............21

**Page**

3.  Daniel's Law Extends Beyond Commercial Speech ...............23

4.  There Is No "Data Broker," "Private Speech," Or "Private Control" Exception To Strict Scrutiny.......................................26

5.  Daniel's Law Is Not Subject To Reduced Scrutiny As A "Privacy" Law ............................................................................29

II.  DANIEL'S LAW FAILS ANY LEVEL OF SCRUTINY ...........................35

A.  Section (e) of Daniel's Law Does Not Withstand Constitutional Review .......................................................................................35

1.  Daniel's Law Is Far More Restrictive Than Necessary ............36

2.  Daniel's Law Is Underinclusive, Undermining Any Safety Interest ......................................................................................43

3.  Less Restrictive Means Exist To Achieve The State's Goals ..........................................................................................45

4.  Daniel's Law Also Fails Intermediate Scrutiny ........................46

B.  Plaintiff's Counterarguments Are Meritless .....................................47

1.  Plaintiff Cannot Defend Daniel's Law's Overinclusiveness ..................................................................47

2.  Plaintiff Cannot Justify Daniel's Law's Allowance Of Government Disclosures Of Prohibited Information................52

III.  DANIEL'S LAW IS UNCONSTITUTIONALLY VAGUE .......................53

CONCLUSION ................................................................................................57

STATEMENT REGARDING ORAL ARGUMENT ............................................59

xxi

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Association of Political Consultants, Inc. v. FCC*,
923 F.3d 159 (4th Cir. 2019), *aff'd sub nom.*, *Barr v. American Association of Political Consultants*, 591 U.S. 610 (2020)..............14, 29, 44, 45

*Americans for Prosperity Foundation v. Bonta*,
594 U.S. 595 (2021)......................................................................16

*Atlas Data Privacy Corp. v. We Inform, LLC*,
758 F. Supp. 3d 322 (D.N.J. 2024), *appeal docketed*, No. 25-1587
(3d Cir. Mar. 31, 2025).......................................................19, 25, 33, 51

*Atlas Data Privacy Corp. v. We Inform, LLC*,
Nos. 25-1555, et al., 2025 WL 3058688 (3d Cir. Sept. 2, 2025).........................50

*Bartnicki v. Vopper*,
532 U.S. 514 (2001)...................................................................19, 20

*Billups v. City of Charleston*,
961 F.3d 673 (4th Cir. 2020)...............................................................47

*Blair v. Appomattox County School Board*,
147 F.4th 484 (4th Cir. 2025)..............................................................16

*Board of Trustees of the State University of New York v. Fox*,
492 U.S. 469 (1989).......................................................................25

*Boelter v. Hearst Communications, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016).........................................................51

*Bolger v. Youngs Drug Products Corp.*,
463 U.S. 60 (1983)........................................................................24

*Brayshaw v. City of Tallahassee*,
709 F. Supp. 2d 1244 (N.D. Fla. 2010)....................................................19, 28

*Brooks v. Thomson Reuters Corp.*,
No. 21-cv-1418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021).................27, 28

**Page(s)**

*Brown v. Entertainment Merchants Association,*
   564 U.S. 786 (2011)..................................................................................43

*Bruni v. City of Pittsburgh,*
   824 F.3d 353 (3d Cir. 2016) ....................................................................17

*Cahaly v. Larosa,*
   796 F.3d 399 (4th Cir. 2015) ..............................................................29, 45

*Carolina Youth Action Project v. Wilson,*
   60 F.4th 770 (4th Cir. 2023)................................................................54, 55

*Central Hudson Gas & Electric Corp. v. Public Service Commission*
   *of New York,*
   447 U.S. 557 (1980)..................................................................................23

*Chamber of Commerce of the United States v. Lierman,*
   151 F.4th 530 (4th Cir. 2025) ..................................................................17

*Christopherson v. Cinema Entertainment Corp.,*
   No. 23-cv-3614, 2024 WL 1120925 (D. Minn. Mar. 6, 2024).........................52

*Citizens for Health v. Leavitt,*
   428 F.3d 167 (3d Cir. 2005) ....................................................................51

*City of Austin v. Reagan National Advertising of Austin, LLC,*
   596 U.S. 61 (2022).............................................................21, 22, 25, 30

*City of Chicago v. Morales,*
   527 U.S. 41 (1999)....................................................................................54

*Clark v. Community for Creative Non-Violence,*
   468 U.S. 288 (1984)..................................................................................20

*Commonwealth v. Duncan,*
   817 A.2d 455 (Pa. 2003)...........................................................................31

*Counterman v. Colorado,*
   600 U.S. 66 (2023)...........................................................................21, 42, 49

*Cox Broadcasting Corp. v. Cohn,*
   420 U.S. 469 (1975)............................................................................28, 37

**Page(s)**

*Crump v. Beckley Newspapers, Inc.*,
320 S.E.2d 70 (W. Va. 1983)................................................................32

*Davenport v. Washington Education Association*,
551 U.S. 177 (2007)................................................................23

*Dex Media West, Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ................................................................4, 25

*Doe v. City of Albuquerque*,
667 F.3d 1111 (10th Cir. 2012) ................................................................17

*Doe v. Cooper*,
842 F.3d 833 (4th Cir. 2016) ................................................................43

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
472 U.S. 749 (1985)................................................................27

*Edgar v. Haines*,
2 F.4th 298 (4th Cir. 2021) ................................................................54

*Erie Railroad Co. v. Tompkins*,
304 U.S. 64 (1938)................................................................51

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012)................................................................54

*FCC v. Pacifica Foundation*,
438 U.S. 726 (1978)................................................................48

*Florida Star v. B.J.F.*,
491 U.S. 524 (1989)................................................................*passim*

*Free Speech Coalition v. Paxton*,
606 U.S. 461 (2025)................................................................2

*Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor &
City Council of Baltimore*,
879 F.3d 101 (4th Cir. 2018) ................................................................23, 24

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
700 F. App'x 251 (4th Cir. 2017)................................................................25

**Page(s)**

*Harris v. Quinn*,
573 U.S. 616 (2014)......................................................................23

*Hechler v. Casey*,
333 S.E.2d 799 (W. Va. 1985)......................................................32

*Hill v. Colorado*,
530 U.S. 703 (2000)......................................................................48

*IMDb.com Inc. v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) ....................................18, 19, 25, 34

*Libertarian Party of Virginia v. Judd*,
718 F.3d 308 (4th Cir. 2013) .......................................................47

*Lorillard Tobacco Co. v. Reilly*,
533 U.S. 525 (2001)......................................................................23

*Maryland Shall Issue, Inc. v. Anne Arundel County*,
91 F.4th 238 (4th Cir.), *cert. denied*, 145 S. Ct. 152 (2024) ..............24

*McNutt v. New Mexico State Tribune Co.*,
538 P.2d 804 (N.M. Ct. App. 1975) .............................................31

*Mishkin v. New York*,
383 U.S. 502 (1966)......................................................................42

*Morgan v. Caliber Home Loans, Inc.*,
26 F.4th 643 (4th Cir. 2022) ........................................................16

*National Institute of Family & Life Advocates v. Becerra*,
585 U.S. 755 (2018)......................................................................35

*O'Dell v. Stegall*,
703 S.E.2d 561 (W. Va. 2010)......................................................32

*Ostergren v. Cuccinelli*,
615 F.3d 263 (4th Cir. 2010) .............................................18, 45, 53

*Packingham v. North Carolina*,
582 U.S. 98 (2017)........................................................................46

**Page(s)**

*PSINet, Inc. v. Chapman*,
  362 F.3d 227 (4th Cir. 2004) ........................................................................48

*Publius v. Boyer-Vine*,
  237 F. Supp. 3d 997 (E.D. Cal. 2017) ........................................................19, 28

*Recht v. Morrissey*,
  32 F.4th 398 (4th Cir. 2022) ........................................................................23

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015)..............................................................................*passim*

*Reno v. ACLU*,
  521 U.S. 844 (1997)...........................................................................54, 55

*Reuber v. Food Chemical News, Inc.*,
  925 F.2d 703 (4th Cir. 1991) .......................................................................32

*Reynolds v. Middleton*,
  779 F.3d 222 (4th Cir. 2015) .......................................................................43

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
  487 U.S. 781 (1988).....................................................................................25

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
  547 U.S. 47 (2006)........................................................................................21

*Sable Communications of California, Inc. v. FCC*,
  492 U.S. 115 (1989)...........................................................................17, 35, 46

*Saunders v. Hearst Television, Inc.*,
  711 F. Supp. 3d 24 (D. Mass. 2024)...........................................................27, 52

*Sheehan v. Gregoire*,
  272 F. Supp. 2d 1135 (W.D. Wash. 2003) ................................................19, 28

*Smith v. California*,
  361 U.S. 147 (1959).................................................................................13, 42, 43

*Soderberg v. Carrion*,
  999 F.3d 962 (4th Cir. 2021) ...................................................................14, 33

**Page(s)**

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)......................................................10, 13, 17, 18, 19

*Tennessee Wine & Spirits Retailers Association v. Thomas*,
588 U.S. 504 (2019)......................................................................49

*Texas v. Johnson*,
491 U.S. 397 (1989)......................................................................20

*Trans Union Corp v. FTC*,
267 F.3d 1138 (D.C. Cir. 2001)......................................................27

*Troster v. Pennsylvania State Department of Corrections*,
65 F.3d 1086 (3d. Cir. 1995) ..........................................................21

*United States v. Playboy Entertainment Group, Inc.*,
529 U.S. 803 (2000)..........................................................29, 45, 49

*United States v. Stevens*,
559 U.S. 460 (2010)......................................................................49

*Vidal v. Elster*,
602 U.S. 286 (2024)..........................................................22, 23, 30, 31

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982)......................................................................54

*Washington Post v. McManus*,
944 F.3d 506 (4th Cir. 2019) ..........................................................35

*Williams-Yulee v. Florida Bar*,
575 U.S. 433 (2015)..........................................................35, 43, 53

*Willis v. Town of Marshall*,
426 F.3d 251 (4th Cir. 2005) ..........................................................21

*Wollschlaeger v. Governor of Florida*,
848 F.3d 1293 (11th Cir. 2017) ......................................................38

**Page(s)**

## STATUTES

47 U.S.C. § 222(e) ............................................................................................7

Pub. L. No. 117-263, § 5931 et seq., 136 Stat. 2395, 3458-69 (2022)..................8, 9

Cal. Penal Code § 76.5 ....................................................................................9

Colo. Rev. Stat. Ann. § 18-9-313(2.7)..............................................................9

Conn. Gen. Stat. § 1-217 .................................................................................8

Del. Code Ann. tit. 10, § 1923(b) ....................................................................8

Fla. Stat. § 119.071(4)(d)(1)(a)........................................................................8

Haw. Rev. Stat. § 92H-2 .................................................................................8

75 Ill. Comp. Stat. 90/2-5(a) ...........................................................................8

Kan. Stat. Ann. § 21-5905(a)(7) ......................................................................9

Md. Code Ann. Cts. & Jud. Proc. § 3-2303(a)-(c)............................................8

Minn. Stat. § 480.45........................................................................................9

Mo. Rev. Stat. § 476.1304 ...............................................................................8

N.J. Rev. Stat. § 2C:20-31.1 ...........................................................................8

N.J. Rev. Stat. § 56.8-166.1 ............................................................................8

N.Y. Judiciary Law § 859(2)(c)(i) ...................................................................8

Neb. Rev. Stat. § 23-3211 ...............................................................................8

Okla. Stat. tit. 20 § 3016(C) ............................................................................8

W. Va. Code § 3-2-30 .....................................................................................4

W. Va. Code § 5A-8-24 ...................................................................................1

W. Va. Code § 5A-8-24(b) ................................................................5, 19, 31, 38

**Page(s)**

W. Va. Code § 5A-8-24(c)(1) ...................................................................5, 37, 56

W. Va. Code § 5A-8-24(c)(3) ........................................................................5, 37

W. Va. Code § 5A-8-24(c)(4) ............................................................................5

W. Va. Code § 5A-8-24(c)(5) ........................................................................5, 37

W. Va. Code § 5A-8-24(d) ........................................................................5, 7, 44

W. Va. Code § 5A-8-24(e)...........................................................................*passim*

W. Va. Code § 5A-8-24(e)(1) ............................................................................7

W. Va. Code § 5A-8-24(e)(2) ............................................................................7

W. Va. Code § 5A-8-24(g) ..........................................................................5, 35

W. Va. Code § 5A-8-24(i) ...........................................................................7, 44

W. Va. Code § 6C-2-2(*l*)................................................................................38

W. Va. Code § 29B-1-2 ..................................................................................5

W. Va. Code § 29B-1-2(2)................................................................................5

W. Va. Code § 30-29-1(6) ......................................................................5, 35, 39

W. Va. Code § 37-11-2 ..................................................................................4

W. Va. Code § 38-2-8 ...................................................................................4

W. Va. Code § 38-2-9 ...................................................................................4

W. Va. Code § 38-2-27 ..................................................................................4

W. Va. Code § 38-3-5 ...................................................................................4

W. Va. Code § 38-10A-4 .................................................................................4

W. Va. Code § 39-1-2 ...................................................................................4

W. Va. Code § 39-1-2b...................................................................................4

xxix

**Page(s)**

W. Va. Code § 44-1-14 ................................................................4

## OTHER AUTHORITIES

Joseph P. Harris, *Registration Of Voters In The United States* (1929) .....................4

Phillip E. Hassman, Annotation, *Publication of Address As Well As Name of Person As Invasion of Privacy*, 84 A.L.R. 3d 1159 (1978) .................31

Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359 (2010) ........................................................................3

Restatement (Second) of Torts (1977)....................................................32

xxx

**ISSUES PRESENTED**

1.    Whether section (e) of West Virginia's Daniel's Law, W. Va. Code § 5A-8-24, facially violates the First Amendment.

2.    Whether section (e) of West Virginia's Daniel's Law, W. Va. Code § 5A-8-24, is unconstitutionally vague under the Fourteenth Amendment.

**INTRODUCTION**

West Virginia's Daniel's Law imposes an extraordinary restriction on protected speech.  The statute prohibits disclosure absent express written permission of the home addresses and phone numbers of a sweeping array of public officials, including anyone who has ever worked in dozens of positions, regardless of whether they even reside in West Virginia.  It applies in circumstances not even remotely connected to the state's asserted interest.  And it lacks any of the guardrails that legislatures across the country have recognized are essential to ensure compliance with the First Amendment.  The district court correctly realized that this outlier statute is flatly unconstitutional.

That result follows from a straightforward application of settled First Amendment principles.  The statute is content-based because it proscribes speech based on the topic discussed: disclosures of home addresses and phone numbers of protected individuals are forbidden, while disclosures of other information are permitted.  As the district court determined, and as courts have held time and again,

that makes the statute presumptively invalid and subject to strict scrutiny. And Daniel's Law is far from the "least restrictive means of achieving" the legislature's interests. *Free Speech Coalition v. Paxton*, 606 U.S. 461, 471 (2025) (citation omitted). There are at least nine analogues to Daniel's Law in other jurisdictions, and all of them are more narrowly tailored.

Indeed, as the district court concluded, Daniel's Law "might be the *most* restrictive of the available means" for achieving its underlying purpose. JA548. And it is hopelessly ill-tailored, leaving the government free to engage in the exact same disclosures that purportedly threaten covered persons when coming from private speakers. The result is that Daniel's Law does not even advance the safety goals at which it is aimed, while, at the same time, it imposes crushing liability on parties who lack any knowledge whatsoever that a particular disclosure violates the statute. Plaintiff's own brief confirms as much, by suggesting that the only way to escape liability for disclosing addresses or telephone numbers is to serve Freedom of Information Act requests to obtain government records on everyone in the country who might possibly be covered by Daniel's Law. That is impossible as a practical matter and underscores the reality that Daniel's Law functions as a flat ban on speech.

Plaintiff knows that Daniel's Law cannot survive strict scrutiny. So he mounts a throw-everything-at-the-wall approach to avoid it, variously arguing that Daniel's

Law does not regulate speech, is not content-based, concerns only commercial speech, and that "privacy" statutes are somehow exempt from strict scrutiny. All of these arguments badly misread governing precedent and call for a stark departure from the First Amendment principles this Court and the Supreme Court have consistently applied.

No one disputes that promoting the safety of public officials and their family members is a laudable goal. But the First Amendment demands that a legislature pursue its laudable goals in a manner that respects the profound importance of free speech. West Virginia did not do so here. The district court's sound decision should be affirmed.

## STATEMENT OF THE CASE

### A.     Factual Background

#### 1.     Historical Availability And Importance Of Home Addresses And Phone Numbers

Home addresses and telephone numbers have long been treated as public information. By the American Revolution, "every English colony had adopted statutes requiring that parties to a mortgage record their names and a description of the property in [a] public office." Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1364 (2010). Likewise, since the 1800s, states have collected names and addresses of registered voters, and then later printed and made those lists available,

3

to combat election fraud and facilitate political canvassing.  Joseph P. Harris, *Registration Of Voters In The United States* 65, 89-92, 168-70, 179-80 (1929).  And phone directories have long been "a ubiquitous part of American life, found in virtually every household and office."  *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 953 (9th Cir. 2012).

In keeping with this historical tradition, many states today—including West Virginia—continue to make home addresses and telephone numbers publicly available in tax, voting, and property records.  *See, e.g.*, W. Va. Code §§ 37-11-2, 39-1-2 (deeds); *id.* § 39-1-2b (mortgages); *id.* § 3-2-30 (voter registration records); *id.* §§ 38-3-5, 38-2-8, 38-2-9, 38-2-27, 38-10A-4 (liens); *id.* § 44-1-14 (appraisals).  Public access to such information is essential for various purposes, including facilitating property transfers, voter outreach, fraud detection, credit checks, and criminal investigations.

### 2.    West Virginia's Daniel's Law

In July 2020, U.S. District Judge Esther Salas's son, Daniel Anderl, was murdered at her New Jersey home by a disgruntled lawyer.  JA35-37 (Compl. ¶¶ 3-5).[1]  In response to that tragedy, many states, including West Virginia, enacted

---

[1]    Unless otherwise noted, all complaint citations are to the First Amended Complaint against Whitepages, Inc.  *See* JA34-78.  The other operative complaints filed by Plaintiff are materially identical with respect to the issues on appeal.  *See* JA79-115 (Thryv, Inc.); JA121-62 (LexisNexis Risk Solutions Inc.); JA163-204 (Thomson Reuters America Corp.); JA205-57 (PeopleConnect, Inc. et al.).

"Daniel's Law" statutes that sought "to enhance the safety and security of certain public officials in the justice system" by restricting disclosure of certain information about them.  W. Va. Code § 5A-8-24(b); JA35 (Compl. ¶¶ 2-3).

Daniel's Law prohibits any "person, business, or association" from making "disclos[ures]" or "redisclos[ures]" of the "home address or unpublished home or personal telephone number" of any covered person.  *Id.* § 5A-8-24(e).  The statute protects a broad range of covered persons, including "any active, formerly active, or retired judicial officer, prosecutor, federal or state public defender, federal or state assistant public defender, or law-enforcement officer," *id.*, as well as the "immediate family members" of any covered person, *id.* § 5A-8-24(g).  The law defines "[j]udicial officer" and "[p]rosecutor" to include judges and prosecutors within and *outside* West Virginia.  *Id.* § 5A-8-24(c)(3), (5).  It also incorporates the sweeping definition of "[l]aw-enforcement officer" from W. Va. Code § 29B-1-2, which encompasses a vast array of government positions, including anyone who has ever served as a litter control officer or resort area district ranger.  *Id.* §§ 5A-8-24(c)(4), (d), 29B-1-2(2), 30-29-1(6).

Daniel's Law defines the range of prohibited disclosures broadly as well. Under the statute, to "[d]isclose" information means "to publish, publicly display, distribute, deliver, circulate, post, lend, provide, advertise, or disseminate by any means … on any medium including, but not limited to, the Internet."  *Id.* § 5A-8-

5

24(c)(1). So, for example, a person could be liable for disclosing to anyone, anywhere, the address of a person who once served as a West Virginia litter control officer but has since moved out of state—or even the address of a family member of that person, regardless of that family member's position.

Daniel's Law couples this startling breadth with a complete lack of guidance as to how to determine whether an individual, in fact, qualifies as a covered person. Critically, the statute does not require potential violators to have *knowledge* that an individual is a covered person. Nor does Plaintiff assert that the statute includes any knowledge requirement. Instead, the statute prohibits any disclosure of covered information "under circumstances in which a reasonable person"—that is, a hypothetical person aware of the circumstances, rather than the discloser themselves—"would believe that providing such information would expose another to harassment or risk of harm to life or property." *Id.* § 5A-8-24(e). The statute does not define what "harassment or risk of harm" entails and withholds liability only where "written permission is first obtained" from the covered person. *Id.* Thus, unlike many analogous statutes elsewhere in the country, West Virginia's Daniel's Law does not require those who wish their information to be removed to provide notice; instead, it requires a party wishing to disclose *anyone's* name or phone number to affirmatively investigate whether that person is covered by the statute, and, if they are, obtain their express written consent.

6

Daniel's Law further provides that any covered person—as well as "any other person residing at the home address" of a covered person—may initiate a civil action against violators of the statute. *Id.* § 5A-8-24(e)(1). The discloser may be subject to "[a]ctual damages, but not less than $1,000, for each violation," punitive damages, attorney's fees and costs, and other equitable relief. *Id.* § 5A-8-24(e)(2).

In contrast, government entities may be liable only where they "*knowingly* disclose*"* covered information. *Id.* § 5A-8-24(d) (emphasis added). There is no enforcement mechanism for this lesser restriction against government entities. In fact, Daniel's Law *permits* the government to release information "required by state or federal law," even though disclosure of the very same information by private actors would trigger penalties. *Id.* § 5A-8-24(i). And such government disclosures of covered information occur often under state law. For instance, West Virginia requires county clerks to make available a host of personal information, including voter registration records and property records. *See supra* at 4; *see also* 47 U.S.C. § 222(e) (requiring disclosure of certain telephone information).

The result is that West Virginia government entities—including county sheriffs' tax offices, JA48-49 (Compl. ¶¶ 38-41), county clerks' offices, JA50 (Compl. ¶¶ 43-44), and the state tax division, JA51-52 (Compl. ¶¶ 46-49)—publish on the internet, in searchable form, and for free, the same information that Daniel's Law generally prohibits private actors from disclosing. Indeed, these public sources

7

are where many private entities like Defendants *obtain* the very information at issue. *See, e.g.*, JA54 (Compl. ¶ 53) (recognizing government is often "the original source of these public records").

### 3.    Other Versions of Daniel's Law

Several other jurisdictions have enacted laws intended to restrict dissemination of addresses and home phone numbers of public officials. But West Virginia's Daniel's Law is an outlier in its breadth. As the district court explained, West Virginia's Daniel's Law "stands out even amongst" the "state and federal statutes to which [it] bears the closest resemblance" due to its "lack of a notice requirement as a prerequisite to a suit for damages." JA550. Other federal and state statutes permit liability only *after* a covered person provides notice of their wish to remove their personal information. *See* JA550 & n.18; Pub. L. No. 117-263, § 5931 et seq., 136 Stat. 2395, 3458-69 (2022); Del. Code Ann. tit. 10, § 1923(b); Haw. Rev. Stat. § 92H-2; 705 Ill. Comp. Stat. 90/2-5(a); Md. Code Ann. Cts. & Jud. Proc. § 3-2303(a)-(c); Mo. Rev. Stat. § 476.1304; N.J. Rev. Stat. §§ 56:8-166.1, 2C:20-31.1; N.Y. Judiciary Law § 859(2)(c)(i); Okla. Stat. tit. 20 § 3016(C).

States have also taken other approaches to regulating disclosure of public officials' home addresses and phone numbers. Some restrict the government from releasing the information in the first place. *See* JA548 & n.14; Conn. Gen. Stat. § 1-217; Fla. Stat. § 119.071(4)(d)(1)(a); Neb. Rev. Stat. § 23-3211. Some impose

8

stiffer criminal penalties, but only on knowing disclosures where the disclosure is intended to intimidate or harass. JA549 & n.16; *see, e.g.*, Colo. Rev. Stat. Ann. § 18-9-313(2.7); Kan. Stat. Ann. § 21-5905(a)(7); Cal. Penal Code § 76.5. And some permit only injunctive relief, at least in the first instance. *E.g.*, Pub. L. No. 117-263, § 5934(f), 136 Stat. at 3466; Minn. Stat. § 480.45.

### B.    Procedural History

#### 1.    This Lawsuit

In July 2024, Plaintiff, a retired law-enforcement officer, filed putative class actions against Defendants in West Virginia state court. After Defendants removed the cases to the Northern District of West Virginia, Plaintiff filed amended class action complaints.

Plaintiff alleged that Defendants violated Daniel's Law by "disclos[ing], redisclos[ing], or otherwise ma[king] available" certain information about him without his permission. *E.g.*, JA38 (Compl. ¶ 10); *see* JA76 (Compl. ¶ 116). He further alleged that Defendants' conduct "exposed Plaintiff and his peers to harassment and/or risk of harm to life or property." *E.g.*, JA66 (Compl. ¶ 85). Plaintiff did not allege that any Defendant knew or should have known he is a covered person. Nor did he provide particularized allegations as to what "harassment" or "harm" he had experienced or could experience.

Defendants thereafter moved to dismiss the operative complaints, and the court heard argument on the motions. *See* JA258-314; JA414-515. The West Virginia Attorney General declined to intervene to defend the law.

### 2. The District Court's Decision

On August 19, 2025, the district court held that section (e) of Daniel's Law is facially unconstitutional. JA558. In a well-reasoned, 41-page opinion, the court concluded that Daniel's Law is subject to strict scrutiny and fails that exacting standard. The court also systematically addressed—and rejected—Plaintiff's various arguments for less-stringent scrutiny and for why the law is appropriately tailored.

First, the court held that "[f]actual disclosures" of home addresses or telephone numbers "constitute speech under well-settled Supreme Court precedent." JA529-530 (citing, *inter alia*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011)). The court next determined that Daniel's Law regulates speech based on its content because it "prohibits public discussion of an entire topic." JA531-532. Because the law "turns on *what*, for example, a whitepages.com entry says … and not … simply what is said vis-à-vis *where* it is said," the law "falls comfortably within the definition of content-based regulation" and is therefore subject to strict scrutiny. JA533.

The court rejected Plaintiff's arguments for less-demanding constitutional scrutiny. It did not matter that Daniel's Law does not discriminate among "viewpoint[s]," the court reasoned, because the statute proscribes discussion of an "entire topic." JA534-535. Likewise, the court rejected Plaintiff's argument that Daniel's Law "pertains to merely commercial speech," given that "disclosing an address or phone number states a fact that could be used for any number of noneconomic purposes, such as promoting transparency or allowing a user of a database to locate an old friend who has moved." JA535-536. Plaintiff's emphasis on Defendants' "'economic motivation'" was unavailing, as "th[at] argument[] would apply just as well to The New York Times." JA535 (citation omitted).

The court also declined Plaintiff's invitation to apply lower scrutiny based on a so-called "specialized privacy analysis." JA537-538. The court explained that the precedent cited by Plaintiff—*Florida Star v. B.J.F.*, 491 U.S. 524 (1989)—only "reinforces the conclusion that strict scrutiny applies." JA539. And the court declined to extrapolate lower scrutiny from "a history and tradition of permitting privacy torts to coexist with the First Amendment." JA544-546.

Finally, the court held that Daniel's Law fails strict scrutiny. JA546. Although a compelling government interest underlies Daniel's Law, the court concluded that the statute is not the "least restrictive means of achieving [that] interest." JA548. The court noted that analyzing the availability of less restrictive

11

means was "particularly straightforward" given the existence of a "variety of analogous state and federal statutes that are more narrowly tailored and burden far less speech in pursuit of the same compelling interest." JA548. Among those state and federal alternatives were disclosure limitations that "do not target private speech" at all and statutes requiring "intent to harass or otherwise harm and actual knowledge that the information pertains to a protected individual." JA548-550; *see* JA548-549 nn.14, 16. Ultimately, the court determined, Daniel's Law "might be the *most* restrictive of the available means." JA548.

The court went on to highlight two of Daniel's Law's most notable constitutional deficiencies. First, unlike other state and federal statutes, Daniel's Law lacks "a notice requirement as a prerequisite to a suit for damages." JA550; *see* JA550 n.17, JA554. That a speaker would need to obtain "written permission" before speaking is "constitutionally problematic" because "the free flow of speech ought to be presumptively favored." JA552. The court found it "difficult to imagine how anyone wishing to speak widely on the topic of home addresses and phone numbers could know exactly which home addresses and phone numbers belong to potential West Virginia's Daniel's Law plaintiffs," which could include "every individual who might have served as a law enforcement officer in West Virginia at some point in their career." JA553.

12

Second, the court emphasized that Daniel's Law lacks a knowledge requirement—*i.e.*, a statutory provision restricting liability to instances in which speakers knowingly disclose covered information. As the court explained, the Supreme Court in *Smith v. California*, 361 U.S. 147 (1959), "specifically recognized the tendency of statutes restricting speech without a knowledge requirement to exert a chilling effect." JA555. Here, the court found that the "lack of a knowledge requirement compounds the lack of a notice requirement" by imposing on speakers the "potentially insurmountable task" of "inspecting their speech for any content that might fall within the scope of West Virginia's Daniel's Law." JA556.

The district court thus held that Daniel's Law was facially unconstitutional under the First Amendment and granted Defendants' motions to dismiss with prejudice. JA558. The court's First Amendment holding obviated any need to address Defendants' vagueness challenge under the Fourteenth Amendment.

## SUMMARY OF THE ARGUMENT

The district court correctly held that Daniel's Law is a content-based speech restriction subject to strict scrutiny. It regulates "dissemination of information"— which the Supreme Court has held is "speech." *Sorrell*, 564 U.S. at 570. And it restricts dissemination of only certain information—addresses and phone numbers—of certain people. Because the law thus turns on the "topic" of the speech

13

at issue, it is content-based and subject to strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

No doubt realizing that strict scrutiny is fatal to Daniel's Law, Plaintiff launches a barrage of threshold arguments for why less-stringent scrutiny supposedly applies. The district court correctly rejected these scattershot arguments. Some are foreclosed by Supreme Court precedent, including *Sorrell* and *Reed*, or this Court's own precedent, which confirms that content-based restrictions regulating "privacy" trigger strict scrutiny. *See Am. Ass'n of Pol. Consultants, Inc. v. FCC*, 923 F.3d 159, 167-68 (4th Cir. 2019), *aff'd sub nom.*, *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610 (2020); *see also Soderberg v. Carrion*, 999 F.3d 962, 617-18 (4th Cir. 2021). And others are not rooted in precedent at all, but instead amount to a plea that the speech at issue is simply not that important. That is not how the First Amendment works.

Daniel's Law fails strict scrutiny—and, for that matter, any level of scrutiny. The law is a sweeping restriction on speech. It prohibits disclosures untethered to any state interest, even when the covered person has no connection to West Virginia. It also (in Plaintiff's view) prohibits disclosures when the speaker has no idea whether the information belongs to a covered person. And it does not require covered persons (or their family members) to provide alleged violators notice before suing them for liquidated damages, punitive damages, and attorney's fees. The

14

practical effect of Daniel's Law is thus to chill *any* disclosure of addresses and phone numbers, regardless of any connection to covered persons. Moreover, while Daniel's Law broadly chills speech by private actors, it simultaneously allows the government to make the very same disclosures, suggesting that the law does not actually advance the interests Plaintiff defends.

Plaintiff has no serious argument that Daniel's Law is appropriately tailored to any state interest. His defense of the statute instead rests almost entirely on an appeal to its purpose: protecting public officials and their families. But while that purpose may be laudable, West Virginia may not regulate speech indiscriminately to achieve it. Indeed, as the district court observed, numerous other states have restricted the disclosure of public officials' information without proscribing as much speech as Daniel's Law.

Even apart from the First Amendment, Daniel's Law is unconstitutionally vague under the Fourteenth Amendment because it leaves key terms undefined. Parties are left to blindly speculate about how much and what type of speech the statute proscribes, with severe penalties for guessing wrong. The lack of notice of the speech Daniel's Law prohibits is an independent reason the statute is unconstitutional.

This Court should affirm the district court's dismissal of Plaintiff's complaints.

15

**STANDARD OF REVIEW**

This Court "review[s] the grant of a motion to dismiss de novo." *Blair v. Appomattox Cnty. Sch. Bd.*, 147 F.4th 484, 491 (4th Cir. 2025). The court "accept[s] as true the well-pled allegations of the complaint and construe[s] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 648 (4th Cir. 2022) (citation omitted).

Defendants argue that Daniel's Law is facially invalid under the First Amendment. Outside the First Amendment context, a litigant must show that "no set of circumstances exists under which the [law] would be valid," or "show that the law lacks a plainly legitimate sweep" to succeed on a facial challenge. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (alteration in original) (citations omitted). By contrast, in the First Amendment context, a litigant may succeed on a facial challenge if the litigant shows that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (citation omitted). But the difference is not significant here because a broad prohibition on speech that fails strict scrutiny satisfies *either* standard. That is because "'[w]here a statute fails the relevant constitutional test (such as strict scrutiny …), it can no longer be constitutionally applied to anyone— and thus there is "no set of circumstances" in which the statute would be valid.'"

16

*Bruni v. City of Pittsburgh*, 824 F.3d 353, 363 (3d Cir. 2016) (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012)); *see Chamber of Commerce of the U.S. v. Lierman*, 151 F.4th 530, 542 (4th Cir. 2025) (law that did not survive heightened scrutiny was "facially unconstitutional").

**ARGUMENT**

"The First Amendment, together with the Fourteenth, provides that states 'shall make no law … abridging the freedom of speech." *Lierman*, 151 F.4th at 535 (alteration in original) (citation omitted). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional." *Reed*, 576 U.S. at 163. The government can only "regulate the content of constitutionally protected speech" if that regulation survives strict scrutiny: it must advance "a compelling interest," and the government must "choose[] the least restrictive means to further the articulated interest." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). Under those principles, this is a straightforward case: West Virginia's Daniel's Law is a content-based restriction on speech that is hopelessly ill-tailored to the government's asserted interest.

## I. DANIEL'S LAW IS SUBJECT TO STRICT SCRUTINY

### A. Daniel's Law Is A Content-Based Speech Restriction Subject To Strict Scrutiny

Daniel's Law clearly regulates speech. The "dissemination of information [is] speech within the meaning of the First Amendment." *Sorrell*, 564 U.S. at 570.

17

Indeed, "[f]acts … are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Id.* Here, as the district court explained, the "[f]actual disclosures" Daniel's Law regulates—including "'disclos[ing], redisclos[ing] or otherwise mak[ing] available … home address[es] or unpublished home or personal telephone number[s],'" W. Va. Code § 5A-8-24(e)—"constitute speech under well-settled Supreme Court precedent." JA529-530. This Court and others have reached the same result for similar types of personal information. *See, e.g.*, *Ostergren v. Cuccinelli*, 615 F.3d 263, 271 (4th Cir. 2010) (social security numbers); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1123 (9th Cir. 2020) (birth dates and ages).

Just as Daniel's Law regulates speech, it does so based on the "content" of that speech. JA531. A speech regulation "is content based" if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. As the district court correctly concluded, Daniel's Law does precisely that, prohibiting "public discussion of an entire topic—the home addresses and phone numbers of protected individuals." JA531-532. Indeed, Daniel's Law discriminates even within the topic of addresses and phone numbers by decreeing that disclosures of "judges['] and prosecutors[']" numbers and addresses are forbidden, while other disclosures of different addresses and numbers (those "of, say, teachers and electricians") are permitted. JA532.

18

Because Daniel's Law "targets one topic but not others," it is "undoubtedly a content-based restriction of speech." JA532. Numerous courts have reached the same conclusion in the context of laws restricting the dissemination of one kind of information—including a court evaluating another state's Daniel's Law. *See Atlas Data Privacy Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 335 (D.N.J. 2024) (home addresses and phone numbers of covered persons), *appeal docketed*, No. 25-1587 (3d Cir. Mar. 31, 2025); *see, e.g.*, *IMDb.com*, 962 F.3d at 1120 (birth dates and ages); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1012-13 (E.D. Cal. 2017) (addresses or phone numbers of public officials); *Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244, 1248-49 (N.D. Fla. 2010) (similar); *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1146 (W.D. Wash. 2003) (similar).

Not only does Daniel's Law proscribe speech discussing some topics and not others, but also it seeks to restrict access to the proscribed information on the rationale that the public will misuse it. *See* W. Va. Code § 5A-8-24(b). State-imposed limits on access to factual material due to perceived "dangers of its misuse" are exactly what the First Amendment was designed to prevent. *See, e.g.*, *Sorrell*, 564 U.S. at 578 (citation omitted); *Bartnicki v. Vopper*, 532 U.S. 514, 529-30 (2001) ("[I]t would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party."). And those content-based restrictions are even more problematic here,

19

where the speech at issue—home addresses and phone numbers—has long been in the public domain and has many important uses. *Supra* at 3-4.

Because Daniel's Law is a content-based restriction on protected speech, it is "presumptively unconstitutional" and must survive strict scrutiny. *Reed*, 576 U.S. at 163.

### B.  Plaintiff's Arguments For Applying Lower Scrutiny All Fail

Attempting to avoid strict scrutiny, Plaintiff advances a series of arguments for why Daniel's Law is subject to less-stringent scrutiny. Each fails.

### 1.  Daniel's Law Regulates "Speech"

Plaintiff begins with the remarkable claim that Daniel's Law does not regulate speech *at all*. As discussed, longstanding precedent refutes that argument. *Supra* at 18. Indeed, "[i]f the acts of "disclosing" and "publishing" information do not constitute speech, it is hard to imagine what does fall within that category.'" *Bartnicki*, 532 U.S. at 527.

Plaintiff nonetheless suggests that "speech" must be "expressive" in order to qualify for First Amendment protection. OB11-12. Each case he cites addresses a different question: what it takes for *non-verbal conduct* (like flag-burning, sleeping in a park, wearing a flag patch, or recreational dancing) to be sufficiently expressive to merit First Amendment protection. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989); *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293-94 (1984);

20

*Troster v. Pa. State Dep't of Corr.*, 65 F.3d 1086, 1092 (3d. Cir. 1995); *Willis v. Town of Marshall*, 426 F.3d 251, 257-58 (4th Cir. 2005). Similarly, *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, which Plaintiff cites for the proposition that "fact[s]" only constitute "elements" of speech, concerned speech that was "plainly incidental" to a law's "regulation of conduct." 547 U.S. 47, 61-62 (2006). Moreover, *Rumsfeld* reaffirmed that statements of fact "are subject to First Amendment scrutiny." *Id.* at 62. None of Plaintiff's cases suggests the disclosures here are not speech.[2]

### 2.    Daniel's Law Restricts Speech Based On Its Content

Plaintiff does not dispute that laws restricting discussion of an entire topic are content-based. He does not cite a single case holding that a law restricting disclosure of only addresses and/or phone numbers is content-neutral.[3]

Still, Plaintiff argues that Daniel's Law is not content-based under *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61 (2022). OB13-14. But *City of Austin* confronted a regulation that distinguished based on the

---

[2]    Daniel's Law also does not regulate speech falling into the very narrow categories of unprotected speech. *See, e.g.*, *Counterman v. Colorado*, 600 U.S. 66, 73-74 (2023) ("true threats," "incitement," "defamation," and "obscenity").

[3]    Plaintiff's law firm expressly acknowledged in another case that Daniel's Law is a content-based speech restriction under *Reed* because it "treats the information" of different individuals "differently." *See* Opp. to Mot. to Dismiss (ECF 71) at 2-4, *Clark v. Instant Checkmate*, No. 1:25-cv-02724-DDD-MDB (D. Colo. Jan. 9, 2026).

*location* of a sign (whether it was on a business's premises)—not its content. 596 U.S. at 73-74. The Supreme Court concluded that this "neutral," location-based regime was "similar to ordinary time, place, and manner restrictions," and thus was content-neutral, even though applying the rule required reading the sign. *Id.* at 69, 71. Notably, the Court "reaffirmed" *Reed*'s core holding that differentiation based on the topic or message of speech *is* content-based restriction. JA532. That is what Daniel's Law does. Because Daniel's Law is not "agnostic as to content," it is content-based. *City of Austin*, 596 U.S. at 69.

Plaintiff also contends that Daniel's Law is not content-based because it does not engage in "viewpoint discrimination" or restrict a particular message. OB26-29. As the district court explained, however, *Reed* "foreclose[s]" those arguments. JA534. There, the Supreme Court held that "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints" or target any particular "message[]." *Reed*, 576 U.S. at 169. And the sign ordinance at issue in *Reed* was likewise content-based "even though the town did not set out with a content-based purpose or justification." JA535; *see Reed*, 576 U.S. at 165-66. That holding controls here.[4]

_____

[4] Plaintiff's remaining authority gets him nowhere. He cites two concurring opinions in *Vidal v. Elster*, 602 U.S. 286 (2024), a case evaluating a content-based trademark restriction. OB26-27. But Daniel's Law does not regulate trademarks. And nothing in *Vidal*, much less any concurring opinion, purports to overrule *Reed*.

22

### 3.    Daniel's Law Extends Beyond Commercial Speech

Plaintiff also argues that Daniel's Law is subject to less-stringent scrutiny because it regulates commercial speech. OB30-36. Once again, Plaintiff is wrong.

Commercial speech is "speech that does no more than propose a commercial transaction." *Harris v. Quinn*, 573 U.S. 616, 648 (2014) (citation omitted). Courts consider three additional factors to evaluate whether speech is commercial: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 879 F.3d 101, 108 (4th Cir. 2018) (citation omitted). Accordingly, the Supreme Court and this Court have applied the commercial speech doctrine to regulations directly targeting advertisements and sales. *See, e.g.*, *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 558-59 (1980) (utility advertising); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 534-35 (2001) (cigarette advertising and sale); *Recht v. Morrissey*, 32 F.4th 398, 405, 408 (4th Cir. 2022) (attorney advertisements). Even in its broadest conception, this Court has limited

---

Plaintiff's reliance on *Davenport v. Washington Education Ass'n*, 551 U.S. 177 (2007), fares no better. OB27-29. *Davenport* considered viewpoint restriction in connection with government *subsidies* of speech, where the government was "acting in a capacity other than as regulator." 551 U.S. at 188. Daniel's Law flatly prohibits dissemination of certain information absent prior consent; that is a government restriction of speech "as regulator." *Id.* Finally, this Court's decision in *Ostergren* did not even address whether the law at issue was content-based. *Contra* OB14.

23

commercial speech to "promoting the product or service, explaining it, or giving warnings about it." *Maryland Shall Issue, Inc. v. Anne Arundel County*, 91 F.4th 238, 248 (4th Cir.), *cert. denied*, 145 S. Ct. 152 (2024) (law requiring informational pamphlet at point of gun sale regulated commercial speech).

Daniel's Law—a blanket prohibition on disclosure of home addresses and unpublished telephone numbers that applies to *anyone*—does not regulate "commercial speech." Disclosure of a home address or phone number neither "propose[s] a commercial transaction" nor "refer[s] to a specific product or service." *Greater Baltimore*, 879 F.3d at 108 (citations omitted). To the contrary, "disclosing an address or phone number states a fact that could be used for any number of noneconomic purposes, such as promoting transparency or allowing a user of a database to locate an old friend." JA536.

As the district court correctly explained, moreover, while some disclosures of addresses and telephone numbers may be "'driven by an economic motivation,'" "economic motivation is not the touchstone of commercial speech analysis." JA535-536 (citation omitted); *see Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983) ( "economic motivation" is "clearly … insufficient by itself to turn [speech] into commercial speech"). After all, the argument that speech is commercial because it is economically motivated or appears alongside advertisements "would apply just as well to The New York Times." JA535. Daniel's Law thus should not be analyzed

24

as a commercial speech restriction. Courts considering restrictions on similar forms of speech have reached the same result. *See, e.g.*, *IMDb.com*, 962 F.3d at 1122 (online database containing age information not "commercial speech"); *Dex Media W.*, 696 F.3d at 959 (same for telephone directory where "two of the three" factors were not met); *see also Atlas*, 758 F. Supp. 3d at 334 (holding New Jersey's Daniel's Law does not regulate commercial speech).

Plaintiff appears to concede that Daniel's Law regulates more than commercial speech; he argues only that "*many* data 'disclosures' regulated by Daniel's Law qualify as commercial speech." OB30 (emphasis added); *see also* OB34 (arguing "at least some speech regulated by Daniel's Law" qualifies). That should be the end of the matter: when a prohibition "'applie[s] with equal force to both commercial and noncommercial messages'" and "admit[s] of no exception for noncommercial speech," a commercial-speech inquiry is inappropriate. *City of Austin*, 596 U.S. at 68 n.3 (citation omitted).[5] Plaintiff nonetheless contends that the

---

[5] Plaintiff's cited cases (OB32-33) analyzing specific messages shared in commercial contexts are thus inapposite. *See Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 254-55 (4th Cir. 2017) (examining whether one "email" sent to grocery "retailers" was commercial speech in context of false advertising claim); *Bd. of Trs. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473-74 (1989) (examining whether as-applied challenge to "Tupperware parties" which "propose a commercial transaction" were "inextricably intertwined" with educational presentation (citations omitted)); *Riley v. Nat'l Fed. of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988) (similar)). So, too, for Plaintiff's

25

result should be different because *Defendants'* speech is commercial. OB33-34. But that is irrelevant. *See* JA536 (district court explaining that Plaintiff's "focus on the law's applicability to defendants' business models is misplaced"). Daniel's Law applies to any "person, business, or association," W. Va. Code § 5A-8-24(e), and "does not otherwise distinguish commercial from noncommercial disclosures," JA537. That is all that matters under *City of Austin*. Because Daniel's Law is a broad-based restriction not limited to commercial speech, intermediate scrutiny is unwarranted.

### 4. There Is No "Data Broker," "Private Speech," Or "Private Control" Exception To Strict Scrutiny

Perhaps recognizing that Daniel's Law does not fit within the commercial speech doctrine, Plaintiff raises a hodgepodge of arguments that he contends make Daniel's Law "like" a commercial speech restriction and thus subject to lower scrutiny. OB33-34. Specifically, Plaintiff contends that Daniel's Law regulates speech related to "'sales of … data,'" speech that is not "of public concern," and speech that does not convey "'ideas.'" OB24-25, 29, 33-36. This doctrinal mishmash falls flat.

Plaintiff argues that a "line of cases" has applied intermediate rather than strict scrutiny to "regulations restricting sales of … data." OB34 (citation omitted). Even

---

cases (OB33-34) concluding that *advertisements* targeted by right-of-publicity claims constitute commercial speech.

if that were accurate, it would provide no basis to apply lesser scrutiny to Daniel's Law, which restricts *any* disclosure of a covered person's information—not just "sales of data." *See* W. Va. Code § 5A-8-24(e). In any event, the case on which Plaintiff relies—*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985)—did not hold that sales of "data" are categorically subject to less constitutional protection. *Dun & Bradstreet* concerned defamation—one of the few types of *unprotected* speech that *can* be proscribed based on its content. *Supra* at 21 n.3. The Supreme Court held that a particular credit report provided by a credit agency to five subscribers—which was "wholly false and clearly damaging to the victim's business reputation"—did not constitute speech of "public concern," an inquiry relevant only to whether the plaintiff was required to prove actual malice to recover presumed and punitive damages. *Dun & Bradstreet*, 472 U.S. at 761-62. The few courts that have cited *Dun & Bradstreet* in support of applying lower scrutiny to disclosures of personal data have not explained the relevance of its defamation-specific principles to content-based restrictions generally. *See, e.g.*, *Trans Union Corp v. FTC*, 267 F.3d 1138, 1140 (D.C. Cir. 2001); *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 33 n.8 (D. Mass. 2024). That is because there is none.[6]

---

[6]  Plaintiff also incorrectly cites an unpublished California district court case, *Brooks v. Thomson Reuters Corp.*, No. 21-cv-1418, 2021 WL 3621837 (N.D. Cal.

Taking a broader tack, Plaintiff suggests that Daniel's Law is like commercial speech because it does not regulate information of "public concern." OB24, 33-36. But neither the Supreme Court nor this Court has held that content-based speech restrictions are permissible if they only restrict speech of private concern. In any event, Daniel's Law *does* restrict information of public concern. As the Supreme Court has long held, information contained in public records is "presumed" to be of public interest. *Florida Star*, 491 U.S. at 535 (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975)); *see Cox Broad.*, 420 U.S. at 495 ("Public records by their very nature are of interest to those concerned with the administration of government …."). For these reasons, courts across the country have repeatedly concluded that the information covered by statutes akin to Daniel's Law is of "public significance" in the relevant sense. *See, e.g.*, *Publius*, 237 F. Supp. 3d at 1013-14; *Brayshaw*, 709 F. Supp. 2d at 1249; *Sheehan*, 272 F. Supp. 2d at 1145. So too here.

Plaintiff additionally theorizes that Daniel's Law should receive lower scrutiny because it "grants individual persons the power to control the republication

---

Aug. 16, 2021), claiming that it "declined to apply strict scrutiny." OB35. That case, however, did not address that issue or any other issue pertaining to the appropriate level of constitutional scrutiny to apply in a facial First Amendment challenge. Instead, the cited portion of the case involved state-law claims arising from the dissemination of alleged "dossiers" regarding plaintiffs and whether those "dossiers" qualified for protection under California's anti-SLAPP (Strategic Lawsuit Against Public Participation) law. *Brooks*, 2021 WL 3621837, at *1, *14-16. Neither those allegations nor claims under California's anti-SLAPP statute is relevant to the constitutionality of West Virginia's Daniel's Law.

28

of their home address and phone number," providing a private "right[]" that does not implicate the "marketplace of ideas." OB28-29. Not so. Daniel's Law does not merely grant a "private person" a "right[]" against another, *id.*; the *state* prohibits *any* disclosure in the first instance, regardless of any action by a covered person. *See* W. Va. Code § 5A-8-24(e). Any abstract "social interest in order and morality," OB28-29, cannot justify lower scrutiny of that type of restriction. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 826-27 (2000) (government must address "real problem" of children's exposure to indecent materials "consistent with First Amendment principles"). And anyway, the speech restricted by Daniel's Law has many important public applications. *Supra* at 3-4.

### 5.     Daniel's Law Is Not Subject To Reduced Scrutiny As A "Privacy" Law

Finally, Plaintiff contends that even if Daniel's Law is a content-based speech restriction that is not limited to commercial speech, it is *still* subject to reduced scrutiny because it is a "privacy law." OB15-25. But this Court has applied strict scrutiny to multiple "privacy" laws. *See, e.g.*, *Am. Ass'n of Pol. Consultants*, 923 F.3d at 167-68 (law "protecting personal and residential privacy"); *Cahaly v. Larosa*, 796 F.3d 399, 405-06 (4th Cir. 2015) (law "protect[ing] residential privacy"). Ignoring those precedents, Plaintiff offers two theories in support of his view that "privacy laws" warrant special constitutional treatment: (1) content-based restrictions with a "'history and tradition'" of coexistence with the First Amendment

29

are not subject to strict scrutiny; and (2) the Supreme Court has supposedly applied laxer scrutiny to "privacy" laws. OB15-25. Neither theory succeeds.

> a. *Any "History and Tradition" Of Privacy Torts Is Irrelevant Here*

As a general matter, "'[c]ontent-based laws merit th[e] protection of' strict scrutiny." *City of Austin,* 596 U.S. at 70 n.4 (alterations in original) (quoting *Reed*, 576 U.S. at 174 (Alito, J., concurring)). And a law's subject matter is generally irrelevant to the level of scrutiny that applies. Plaintiff nonetheless contends that strict scrutiny is unwarranted here because Daniel's Law is a "privacy" law analogous to historical privacy torts. OB15-17, 21-24. That is wrong twice over. There is no generalized "history and tradition" exception to strict scrutiny, and Daniel's Law departs from Plaintiff's historical torts in any event.

Seizing on *Vidal v. Elster*, 602 U.S. 286 (2024), Plaintiff claims that if a "content-based restriction has a history of 'longstanding coexistence'" with the First Amendment, then courts should not apply strict scrutiny to that restriction. OB15 (citation omitted). But *Vidal*, a "narrow" opinion about trademark law, did not establish any such rule. 602 U.S. at 310. As the district court explained, "*Vidal* does not purport to require a trans-substantive history and tradition test for the First Amendment." JA544. Rather, *Vidal* held only that in the "unique trademark context," courts "'*can* consider … history and tradition'"—deploying "non-mandatory language." JA544 (quoting 602 U.S. at 301); *see also* JA545 (explaining

30

that the Supreme Court has "cabined the relevance of history in interpreting the First Amendment"). And *Vidal* cautioned that it *did not* "set forth a comprehensive framework for judging" even other "content-based" *trademark* restrictions. 602 U.S. at 310. Yet, in Plaintiff's view, *Vidal* means that *any* law with *any* connection to "privacy"—even laws like Daniel's Law that expressly invoke different purposes—are subject to lower scrutiny. *See* W. Va. Code § 5A-8-24(b) ("purpose" of law is "to enhance the safety and security of certain public officials"). Nothing in *Vidal* supports that revolutionary result. On the contrary, *Vidal* itself *refutes* the view Plaintiff advances here.

In any event, the three torts Plaintiff invokes—"public disclosure of private information," "misappropriation of name and likeness," and "intrusion upon seclusion," OB15-16—are not similar to Daniel's Law. Home addresses and phone numbers are historically *public*, and the common law right of privacy did not extend to such information. *Supra* at 3-4; *see* Phillip E. Hassman, Annotation, *Publication of Address As Well As Name of Person As Invasion of Privacy*, 84 A.L.R. 3d 1159, § 1 (1978) (concluding that "under the Restatement, the mere publication of a person's address, no matter what the circumstances, could not constitute an invasion of his privacy," and collecting cases). There was no historical "privacy expectation" in a home address, *Commonwealth v. Duncan*, 817 A.2d 455, 456 (Pa. 2003), which has long been considered "a public fact," *McNutt v. N.M. State Trib. Co.*, 538 P.2d

31

804, 808 (N.M. Ct. App. 1975); *see Hechler v. Casey*, 333 S.E.2d 799, 811-12 (W. Va. 1985).

The privacy torts to which Plaintiff compares Daniel's Law are wholly inapposite. Publication of private facts and intrusion on seclusion concern information for which the plaintiff has a reasonable expectation of privacy and that is actually private. *See, e.g.*, *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 719 (4th Cir. 1991) ("[I]f information is already in the public domain when published by a defendant, it does not qualify as private facts."); *O'Dell v. Stegall*, 703 S.E.2d 561, 594 (W. Va. 2010) (addressing intrusion claim and explaining that "plaintiff had no right to privacy—that is, no right to not have his car photographed—while driving in a public place"); Restatement (Second) of Torts § 652D cmt. b (1977) ("[T]here is no liability for giving publicity to facts about the plaintiff's life that are matters of public record …."). And Daniel's Law has nothing to do with a plaintiff's "'name,'" "'likeness,'" "'goodwill'" or "'reputation,'" and thus does not resemble the "misappropriation-of-name-and-likeness" tort. OB16 (citation omitted); *see Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 86 (W. Va. 1983).

      b.    *Florida Star Provides No Basis To Apply Lower Scrutiny*

Plaintiff also claims that the Supreme Court has "rejected the application of strict scrutiny" to certain privacy laws due to a supposed "clash" between those laws

and the First Amendment. OB18-19 (citing, *inter alia*, *Florida Star* and *Cox Broadcasting*). As this Court has recognized, Plaintiff is wrong.

In *Florida Star*, the Supreme Court considered the validity of a damages award punishing disclosure of truthful, lawfully obtained information—specifically, the publication of a certain crime victim's name in a newspaper. 491 U.S. at 532-33. The Court held that "state officials may not constitutionally punish" the publication of truthful, lawfully obtained information of public concern, unless the restraint "further[ed] a state interest of the highest order." *Id.* at 533 (citation omitted). Under this Court's precedent, the *Florida Star* test is a form of "strict scrutiny." *Soderberg v. Carrion*, 999 F.3d 962, 970 (4th Cir. 2021). The district court thus properly concluded that *Florida Star* would, at most, provide an "additional" basis for strict scrutiny, and that it could skip *Florida Star*'s framework entirely because "Daniel's Law is already subject to strict scrutiny." JA542.

Plaintiff nonetheless urges this Court to "follow" an out-of-circuit district court decision from New Jersey, which deployed a watered-down version of the *Florida Star* test. OB17-18; *see Atlas*, 758 F. Supp. 3d at 335-37. But while *Soderberg* is not controlling precedent in New Jersey, it does control here. Moreover, the entire premise of Plaintiff's argument—that courts "reject[] the application of strict scrutiny as a facial matter where privacy torts clash with the First Amendment," OB18—is fundamentally incorrect, given *Soderberg* and numerous

33

decisions from this and other courts subjecting privacy laws to strict scrutiny. *See supra* at 29-30; *see also, e.g.*, *IMDb.com*, 962 F.3d at 1123.[7]

In any event, if this Court *did* apply *Florida Star*, Daniel's Law would fail that test, too. Daniel's Law restricts publication of "truthful information" (addresses and phone numbers) of "public significance" (because addresses and phone numbers are matters of public record and constitute important tools of communication, fraud prevention, law enforcement, and accountability). *Florida Star*, 491 U.S. at 533 (citation omitted); *supra* at 28-29. And given its broad and indiscriminate scope, along with its glaring underinclusivity, Daniel's Law is not "narrowly tailored to a state interest of the highest order." *Florida Star*, 491 U.S. at 541; *infra* at 37-43.

In short, there is no basis to apply anything less than strict scrutiny to Daniel's Law.

---

[7] As the district court noted, the *Atlas* court's standard was not faithful to *Florida Star*. *Atlas* "used its finding" that addresses and telephone numbers were not matters of public significance as "a factor weighing against First Amendment protection," not (as in *Florida Star*) as "a trigger for applying the 'second inquiry in the test,'" which considers whether the law is narrowly tailored to a state interest of the highest order. JA543 n.11 (citation omitted). And "at times," *Atlas* "sounds in a rational basis review register." JA538 n.10.

## II.   DANIEL'S LAW FAILS ANY LEVEL OF SCRUTINY

### A.   Section (e) of Daniel's Law Does Not Withstand Constitutional Review

Because strict scrutiny applies, section (e) of Daniel's Law is "presumptively unconstitutional," *Reed*, 576 U.S. at 163, and Plaintiff bears the heavy burden of showing that it is "the least restrictive means" of achieving a "compelling interest," *Sable Commc'ns*, 492 U.S. at 126.  This Court has recognized that this test is "virtually impossible to satisfy." *Wash. Post v. McManus*, 944 F.3d 506, 520 (4th Cir. 2019); *see also Nat'l Inst. of Fam. & Life Advocates v. Becerra*, 585 U.S. 755, 766 (2018).  Indeed, the Supreme Court has upheld only a handful of speech restrictions to which it has applied strict scrutiny over several decades.  *See Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) (citing three such instances and deeming them "rare" (citation omitted)).

Plaintiff comes nowhere close to carrying his burden.  Daniel's Law is grossly overinclusive, prohibiting wide swaths of private speech untethered to any state interest.  To play it out:  a person risks liability anytime they share an address simply because the person whom the address concerns may be related to, say, a campus security officer or a litter control officer.  *See* W. Va. Code §§ 5A-8-24(g), 30-29-1(6).  And under Plaintiff's reading, the discloser can be sued even if they lack any notice or knowledge that they are sharing a covered person's information and

35

exposing them to the requisite risk of harm.[8]  These "facially apparent defects," JA558, render Daniel's Law a stunningly broad and unprecedented speech restriction.

Daniel's Law is also underinclusive, as it simultaneously prohibits private entities from disclosing certain information while leaving that *same* information publicly accessible through government sources.  The law's gaping exception for government disclosures ensures that it does not advance its underlying aims.  Moreover, the existence of other federal and state statutes which similarly restrict dissemination of public officials' addresses and phone numbers, but which lack Daniel's Law's constitutional infirmities, makes clear that less restrictive means are available.  And even if Plaintiff is right that strict scrutiny does not apply, intermediate scrutiny would not save Daniel's Law, as it is not reasonably tailored to the state's interest.  As courts across the country have held when addressing similar laws, Daniel's Law violates the First Amendment.

### 1.    Daniel's Law Is Far More Restrictive Than Necessary

Because Daniel's Law sweeps in far more speech than necessary to accomplish the legislature's stated goals, the statute is unconstitutionally

---

[8]  *See, e.g.*, OB4 (stating Defendants violated Daniel's Law, absent allegations of notice or knowledge); OB44 (stating any "reasonable person" would believe Defendants' disclosure of covered persons' information violates statute and calling Defendants' products "'dangerous'" by nature (citation omitted)).

36

overinclusive. The statute's broad terms, as well as the absence of notice and knowledge requirements, are constitutionally problematic.

**a.** The law's overinclusiveness is apparent on its face. To start, Daniel's Law adopts an unnecessarily broad definition of "disclose" that includes *any* use of a person's home address or unpublished home or personal phone number. *See* W. Va. Code § 5A-8-24(c)(1) (defining "[d]isclose" to mean "to publish, publicly display, distribute, deliver, circulate, post, lend, provide, advertise, or disseminate by any means … on any medium"). This definition seemingly applies to any transmission of covered information from one person to another, sweeping in all sorts of innocent speech that is disclosed for important reasons. The statute's far-reaching definition of "disclose" also encompasses disclosures of information republished from the public domain, even though the Supreme Court has long held that "[s]tates may not impose sanctions on the publication of truthful information contained in official [government] records open to public inspection." *Cox Broad.*, 420 U.S. at 495.

Furthermore, the law stretches to cover innumerable current and former judges, prosecutors, and other officials who have *never* lived or worked in West Virginia, or who moved out of the state many years ago. *See, e.g.*, W. Va. Code § 5A-8-24(c)(3), (5) (defining "[j]udicial officer" as including "any … judge for a court established by federal law," and "[p]rosecutor" as including "any … prosecutor

37

established by federal law"); *id.* § 5A-8-24(e) (permitting "active," "formerly active," or "retired" officials to sue). The statute's breathtaking scope far exceeds West Virginia's professed interest in "enhanc[ing] the safety and security of" those "who serve or have served *the citizens of West Virginia*." *Id.* § 5A-8-24(b) (emphasis added).

Moreover, Daniel's Law prohibits entire categories of speech whenever the speech may "expose" either covered persons or "another" to "harassment"—a term left conspicuously undefined. *Id.* § 5A-8-24(e). "Harassing" conduct is a vague term that may constitute "annoy[ance]," *Wollschlaeger v. Governor of Florida*, 848 F.3d 1293, 1320 (11th Cir. 2017) (citation omitted); *see* W. Va. Code § 6C-2-2(*l*) (public employee grievance regulation, defining "harassment" to include "annoyance"). Daniel's Law thus prohibits a large swath of speech that has nothing to do with the state's asserted interest in protecting officials' safety. *See* W. Va. Code § 5A-8-24(b).

Taken together, Daniel's Law's sweeping terms would create liability in a host of scenarios untethered to any legitimate state interest. For example, the statute would prohibit a private business from sharing the phone number of a former hospital police officer who does not live in West Virginia with another business seeking security officers, simply because someone else might use the phone number

38

to harass the person. *See id.* § 30-29-1(6) (hospital police officer falls under "[l]aw enforcement officer"). That is the very definition of over-inclusive.

**b.**    Even more astonishing than the capacious terms contained in Daniel's Law is what the statute lacks: any notice or knowledge requirement.

To start, Daniel's Law contains no verification mechanism or other requirement that a violator have notice that an address or phone number belongs to someone who has held one of the many covered positions. The result is that a speaker cannot know *ex ante* whether the information they are disclosing is covered by the statue. Especially given the massive threat of monetary liability of at least $1,000 in liquidated damages per violation (plus additional penalties and attorney's fees), the absence of a notice requirement will have a significant chilling effect, leading people to refrain from regulated speech altogether.

Plaintiff suggests that would-be speakers should resort to undertaking person-by-person investigations by submitting public records requests under the Freedom of Information Act and cross-referencing the information with *every* individual in the country to determine if they are covered by the statute. OB42. But Plaintiff's own Complaint demonstrates the impracticability of such an approach: His name, "Michael Jackson," yields results for at least 46 other individuals in West Virginia alone, JA52 (Compl. ¶ 49), meaning it would be nearly impossible to confirm which information belongs to him (or any other covered person). And that is just one

39

example.  If a speaker has to go through such an arduous process to disclose *any* name or phone number, the predictable result is self-censorship of *all* relevant speech.  As the court below put it, such self-censorship is "constitutionally problematic" and runs counter to the axiom that "the free flow of speech ought to be presumptively favored."  JA552.

Plaintiff's view of Daniel's Law renders the statute even more egregiously overinclusive.  Under Plaintiff's interpretation, a defendant is liable immediately upon disclosure, even if the defendant is *entirely unaware* that the disclosure (1) relates to a covered person or (2) exposes that person to harassment or risk of harm to life or property, and regardless of whether the defendant knew, or could have known, of these facts.[9]  On Plaintiff's telling, every time someone would like to provide another person with an address or phone number, they must not only engage in the (often impossible) task of determining whether that person (or someone in that person's immediate family) currently holds or has ever held a covered job, but also undertake a freewheeling assessment of whether such speech might expose the person, or "another," to an undefined quantum of risk, or anything that could be considered "harassment."  It is thus essentially impossible to know, before speaking, whether a disclosure is prohibited by Daniel's Law—which means

---

[9]  Defendants do not concede that this reading reflects an accurate understanding of Daniel's Law.

40

it is essentially impossible to know whether one is *complying* with Daniel's Law.  In fact, Plaintiff alleges no circumstances specific to him that make the disclosure of *his* information likely to "expose [him] to harassment or risk of harm," W. Va. Code § 5A-8-24(e), let alone how a defendant could determine whether such circumstances exist.

Contrary to Plaintiff's assertion (at 43-44), Daniel's Law's "reasonable person" language does not salvage the statute.  *See also* OB8.  In fact, Plaintiff's maximalist view of the statute imposes no First Amendment guardrails at all.  According to Plaintiff, any "reasonable person" would believe that "Defendants-Appellees' unauthorized provision of Covered Persons' personal information would expose them to harassment or risk of harm to life or property," because the availability of a "'search function'" and "'aggregate[d]'" information on Defendants' websites *necessarily* is "'conducive to telephone harassment'" and will "'entice people (including potential bad actors).'"  OB44-46 (quoting JA67-68).  Plaintiff confusingly states that "[t]his may not be so for every act of disclosure," OB44, but fails to offer any scenario in which a disclosure is permitted.  In other words, the mere disclosure of covered persons' information renders the speaker liable under Daniel's Law, no matter whether the covered person is a high-profile politician still in office or a former West Virginia litter control officer with no ties to the state, and absent any showing of the officer's circumstances.  In Plaintiff's

41

view, Defendants' products are "dangerous" by nature—and any disclosure of covered persons' information violates Daniel's Law by default. OB44 (quoting JA67). That approach would sweep in vast amounts of innocent speech completely untethered to the government's asserted interests.

As the district court explained, the lack of a knowledge requirement "compounds" the lack of a notice requirement because "those wishing to comply with West Virginia's Daniel's Law will face the burden of inspecting their speech" for violative content—a "potentially insurmountable task." JA556. That is the problem with speech bans that impose liability even when a speaker is unaware of the prohibited nature of their speech: speakers will "'self-censor[]'" so as to "steer[] 'wide[] of the unlawful zone.'" *Counterman*, 600 U.S. at 77-78 (citations omitted); *see also id.* at 75 (noting that "[p]rohibitions on speech have the potential to chill, or deter, speech outside their boundaries"); *Mishkin v. New York*, 383 U.S. 502, 510-11 (1966) (emphasizing "hazard of self-censorship").

Take, for example, *Smith v. California*, which concerned a ban on obscene books with no knowledge requirement. 361 U.S. 147, 152-53 (1959). The Supreme Court noted that a bookseller could theoretically "make himself aware of the contents of every book in his shop"—but reasoned that "[i]t would be altogether unreasonable to demand so near an approach to omniscience." *Id.* at 153 (citation omitted). Because a rational bookseller would instead "restrict the books he sells to

42

those he has inspected," he likely would engage in self-censorship of those he had not, thereby "impos[ing] a severe limitation on the public's access to constitutionally protected matter." *Id.*

So too here. Daniel's Law's lack of a notice or verification provision, paired with Plaintiff's view that liability attaches without awareness of either a person's covered status or any particularized risk of harm, makes it essentially impossible to comply with Daniel's Law while continuing to disclose address or phone number information—even information that can be lawfully disclosed for law enforcement functions, credit checks, service of process, and voter outreach, among other uses. The practical effect is to prohibit any such disclosures, an indication that the law is not remotely tailored to the government's stated interest. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 804 (2011); *cf. Reynolds v. Middleton*, 779 F.3d 222, 230-31 (4th Cir. 2015) (law barring all solicitation at any road was not narrowly tailored); *Doe v. Cooper*, 842 F.3d 833, 847 (4th Cir. 2016) (broad restriction on movement for those previously convicted of certain sex offenses was not sufficiently tailored).

### 2. Daniel's Law Is Underinclusive, Undermining Any Safety Interest

The underinclusive nature of Daniel's Law provides an independent ground on which to find the statute unconstitutional. Contrary to Plaintiff's suggestion (at 47), "underinclusivity raises a red flag" for purposes of constitutional analysis, as it can "reveal that a law does not actually advance a compelling interest." *Williams-*

*Yulee*, 575 U.S. at 449; *see Am. Ass'n of Pol. Consultants*, 923 F.3d at 167 n.9 ("Because [the law at issue] is fatally 'underinclusive,' [the Court] need not assess any issue of 'overinclusiveness.'" (citation omitted)).

Daniel's Law leaves a gaping hole in its regulation of speech.  For government actors, Daniel's Law (1) bars only "knowing[]" violations; (2) provides no means of enforcing the law; and (3) exempts huge amounts of disclosure from coverage in the first place.  *See* W. Va. Code § 5A-8-24(d), (i).  As a result, the government—the source of much of the information on Defendants' websites, JA54 (Compl. ¶ 53)—has carte blanche to engage in exactly the activity that Daniel's Law prohibits for private persons and entities, thus "subvert[ing] the … protections underlying the ban." *Am. Ass'n of Pol. Consultants*, 923 F.3d at 168.  In fact, Plaintiff himself acknowledges that government public records—including through state and county tax offices, mapping websites, and the Secretary of State—already contain most of the information allegedly disclosed by Defendants.  *See* JA48-54 (Compl. ¶¶ 37-52).  Even accepting as true that government records provide "less robust, less straightforward search functions" and yield "little contextual information," JA53-54 (Compl. ¶ 52), the fact remains that the government already discloses the same information that Daniel's Law prohibits private entities from disclosing.

This is paradigmatic underinclusiveness: "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons

44

other than the source for its release." *Florida Star*, 491 U.S. at 535. In similar circumstances, this Court has not hesitated to find statutes unconstitutional under the First Amendment. *See, e.g.*, *Am. Ass'n of Pol. Consultants*, 923 F.3d at 167-68 (statute "fatally underinclusive"); *Ostergren*, 615 F.3d at 286 (law not narrowly tailored where "Virginia currently makes th[e] same records available" online); *Cahaly*, 796 F.3d at 406 (statute "underinclusive[]" where it restricted some calls "but permits 'unlimited proliferation' of all other types" (citation omitted)).

### 3. Less Restrictive Means Exist To Achieve The State's Goals

The district court correctly determined—and Plaintiff does not contest—that Daniel's Law "might be the *most* restrictive of the available means for achieving its compelling interest." JA548. Although it is not up to Defendants to rewrite the statute, *see Playboy Ent. Grp.*, 529 U.S. at 816, there are many ways in which Daniel's Law could be more narrowly drawn. For instance, the law could have required defendants to have *some* awareness that the information at issue belongs to a covered person, and it could have imported section (d)'s "knowledge" requirement into section (e). Daniel's Law also could have applied only to West Virginia officials. And it could have defined terms such as "disclose," "risk of harm," "expose," and "harassment" more narrowly (or at all).

Statutes from other jurisdictions confirm that less restrictive means exist. Most notably, at least eight states and the federal government require some form of

45

notice-and-takedown process by the covered person *before* imposing civil liability pursuant to Daniel's Law analogues. *Supra* at 8-9.[10]  There is no legislative finding explaining why West Virginia omitted a notice requirement.  And that omission is particularly arresting given the breadth of individuals and disclosures its law covers. *Supra* at 37-38.  Because Daniel's Law plainly is not the "least restrictive means" of meeting the state's interest, *Sable Commc'ns*, 492 U.S. at 126, 129, the statute necessarily fails strict scrutiny.

### 4.    Daniel's Law Also Fails Intermediate Scrutiny

For the reasons above, Daniel's Law fails even intermediate scrutiny.  Plaintiff cannot show how a sweeping restriction on the disclosure of *any* contact information of countless individuals within and outside of West Virginia, absent notice or knowledge of any risk of harm to a covered person, is "'narrowly tailored to serve a significant governmental interest.'"  *Packingham v. North Carolina*, 582 U.S. 98, 105-06 (2017) (citation omitted).  Even worse, Daniel's Law imposes this severe limitation while allowing—and even requiring—government entities to disclose the same information.    Under any level of scrutiny, the law violates the First Amendment.

---

[10] Defendants take no position on whether those laws, considered in their entirety, are appropriately tailored—but in any event they are more tailored than West Virginia's law.

46

### B.    Plaintiff's Counterarguments Are Meritless

Plaintiff's policy-driven defense of Daniel's Law confirms that the statute is a sweeping, unworkable speech restriction that violates the First Amendment.

### 1.    Plaintiff Cannot Defend Daniel's Law's Overinclusiveness

**a.**    Rather than directly address the district court's tailoring concerns, Plaintiff repeatedly resorts to policy arguments based on the statute's interest in keeping covered persons out of "harm's way" and preventing disclosure of their personal information before it is "too late." *See* OB39-41. But "the constitutionality of a law that restricts protected speech does not turn solely on the significance of the governmental interest involved." *Billups v. City of Charleston*, 961 F.3d 673, 686 (4th Cir. 2020). As this Court has noted time and again, "to zealously safeguard the right to free speech … undoubtedly among the most fundamental of American rights," courts "must also ensure that the government's chosen method for protecting its significant interests is not too broad." *Id.*

For this reason, Plaintiff's citation to the interest motivating "'unwilling listener[]'" and "captive audience" laws is beside the point. *See* OB40-41 (citation omitted). This Court has made clear that even an extraordinarily compelling interest cannot justify an ill-tailored statute. *See, e.g.*, *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 317-18 (4th Cir. 2013) (even where all agreed that "prevention of election fraud is a compelling state interest," state's ban on nonresidents witnessing

47

nominating petitions was unconstitutional in light of alternatives "manifestly less restrictive of … First Amendment rights"); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 234, 239 (4th Cir. 2004) (although "[i]t is clear that the government's interest in protecting minors from sexually explicit Internet materials is compelling," statute criminalizing display of all "'electronic file[s] or message[s]'" containing "'harmful'" words that minors may "'examine and peruse'" was "not a narrowly tailored solution" (citation omitted)).

Here, all agree West Virginia has an interest in protecting the safety of covered persons; the only dispute is whether Daniel's Law is the least restrictive means of achieving that interest. Plaintiff's own case law highlights why Daniel's Law is mistailored to the aims it purports to serve. Unlike the laws cited by Plaintiff, Daniel's Law does not directly limit speech directed at "unwilling" or "captive" audiences. *Contra FCC v. Pacifica Found.*, 438 U.S. 726, 748 (1978) (cited at OB40) (in considering order finding indecency in radio station broadcast and imposing threat of future sanctions, noting that broadcast media is "uniquely pervasive" and "confronts the citizen … in the privacy of the home"); *Hill v. Colorado*, 530 U.S. 703, 718 (2000) (cited at OB41) (in considering ban on persons "knowingly approach[ing]" unwilling listeners near health care facility, invoking "interests of unwilling listeners" in "captivity" (citation omitted)). It instead limits

48

speech on the premise that a third party—rather than the speaker—will harm or harass covered persons.

**b.**     Similar problems pervade Plaintiff's argument that Daniel's Law survives strict scrutiny because it is a permissible exercise of the state's "police power[]" to protect its citizens.  OB54-55 (citation omitted).  While Plaintiff contends that Defendants "fail[] to provide any real alternative" to achieve that goal, OB55, it is *Plaintiff*'s burden to show that no alternative would be effective.  *See Playboy Ent. Grp.*, 529 U.S. at 813.  In any event, a state's "police power" is limited to "regulations that do not … violate rights secured by the Constitution of the United States."  *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 521-22 (2019) (citation omitted).  Because Daniel's Law violates the First Amendment, it cannot be justified under West Virginia's "police power."

Plaintiff also vaguely gestures at the safety concerns underlying Daniel's Law, contending that Daniel's Law's safety focus renders it similar to laws restricting "true threats."  OB54-55 (citation omitted).  But Plaintiff does not (and could not) argue that Daniel's Law reaches only true threats, which are "'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence,'" *Counterman*, 600 U.S. at 74 (citation omitted).  This Court, moreover, may not declare additional categories of speech outside First Amendment protection.  *See United States v. Stevens*, 559 U.S. 460, 470-72 (2010).  And more fundamentally,

49

the fact that Daniel's Law regulates safety speaks only to the interest it serves—not to its tailoring.

**c.**    Plaintiff further claims that the "tremendous difficulty" covered persons would experience in providing notice to "*innumerable*" data brokers, OB38-39, and Defendants' supposed ability to "identify Covered Persons via public records," OB42, somehow excuse the absence of a notice requirement. But Plaintiff misapprehends his burden. Content-based restrictions of speech are disfavored and "presumptively unconstitutional." *Reed*, 576 U.S. at 163. It is not enough for Plaintiff to point out that Daniel's Law saves covered persons from the inconvenience and stress of "dig[ging] up obscure data brokers" and "navigat[ing]" notice processes. OB39. Rather, Plaintiff must demonstrate that the curtailment of would-be speakers' speech is not more extensive than necessary to meet the statute's goals.[11]

---

[11] Plaintiff takes issue with the district court's consideration of New Jersey's Daniel's Law and other state statutes that employ notice requirements, contending that the court "ignored" that New Jersey's Daniel's Law "provides for the assignment of claims." OB38. But the fact that New Jersey provides the option to assign one's rights says nothing about whether West Virginia's "opt-in regime," *id.*, is sufficiently tailored to withstand strict scrutiny. Neither the district court nor the Third Circuit directly opined on the implications of the assignment provision on the constitutionality of a statute without any notice requirement, and, in fact, the Third Circuit took a challenge to New Jersey's Daniel's Law on interlocutory appeal because it poses "hard constitutional questions." *Atlas Data Privacy Corp. v. We Inform, LLC*, Nos. 25-1555, et al., 2025 WL 3058688, at *1 (3d Cir. Sept. 2, 2025). Moreover, although the district court discussed New Jersey's Daniel's Law in detail,

**d.**      In an effort to assert that the "reasonable person" language somehow cabins Daniel's Law, Plaintiff suggests, without further explanation, that under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), any culpability under Daniel's Law would be a "matter of state law."  OB43 (quoting *Atlas*, 758 F. Supp. 3d at 340).  But Plaintiff identifies no authority suggesting that the question at issue here—Daniel's Law's facial constitutionality—cannot be decided by federal courts.  Nor would anything about state law change the statute's dramatic overinclusiveness.

**e.**      Finally, Plaintiff cites a smattering of cases in which courts have upheld "privacy laws" against constitutional challenges, suggesting that this Court should reverse "[f]or the same reasons" as those cases.  OB36-37.  But the fact that other laws, restricting different disclosures by different entities, may be sufficiently tailored says nothing about whether Daniel's Law strikes the constitutionally required balance.[12]

---

it also cited less restrictive federal and state statutes that had notice provisions but lacked assignment provisions.  *See* JA550 n.18 (citing statutes).

[12]  Plaintiff's cited cases are in any event inapposite.  For instance, *Citizens for Health v. Leavitt* involved a healthcare information disclosure rule that the Third Circuit found "ill-suited" for a First Amendment challenge because any speech restriction resulted from "independent decisions of private parties," rather than the state.  428 F.3d 167, 184-85 (3d Cir. 2005).  The video rental protection statute cases are likewise irrelevant because they involve restrictions on "the group of individuals most likely to reveal consumer identifying information"—that is, video rental businesses in privity with the consumers and thus readily able to obtain their consent to any disclosures—rather than, as here, the speech of entities with no relationship to the covered persons.  *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 450

### 2. Plaintiff Cannot Justify Daniel's Law's Allowance Of Government Disclosures Of Prohibited Information

Plaintiff's attempts to defend Daniel's Law's treatment of government disclosures of covered persons' information likewise fall flat.

Plaintiff first argues that Daniel's Law is "tailored to the unique concerns surrounding public and private disclosures." OB48. But Plaintiff does not specify these "unique concerns" or cite anything in support. And to the extent that "the fear of being sued" and other concerns "will dampen the ardor" of public officials, OB49 (citation omitted), Plaintiff does not explain how this justifies curtailing the speech of private actors.

Plaintiff also contends that Daniel's Law's differing treatment of private and government disclosures is justified because public records are "far less accessible" than other information posted online, and because the government "'does not disclose, redisclose, or otherwise make available unpublished'" information. OB50 (quoting JA57). But, as Plaintiff's own allegations show, West Virginia's free online public listings make it easy to find law enforcement officials' home addresses, even with as little information as their county of residence and middle initial. JA49-50 (Compl. ¶¶ 41-42). It also does not matter that Defendants "advertise" their

---

(S.D.N.Y. 2016); *see also Saunders*, 711 F. Supp. 3d at 33 (same); *Christopherson v. Cinema Ent. Corp.*, No. 23-cv-3614, 2024 WL 1120925, at *5 (D. Minn. Mar. 6, 2024) (same).

52

services. OB50 (citation omitted). The reality remains the same: a person seeking a government official's home address or phone number could readily obtain that information from government sources. And as discussed, permitting the government to disclose the same information that Defendants are punished for disclosing is "anomalous" and constitutionally impermissible. *Florida Star*, 491 U.S. at 535, 538; *see also Ostergren*, 615 F.3d at 280.

Finally, Plaintiff asserts that Defendants "overlooked" that West Virginia's public databases provide "substantial and important services to their constituents," while "Covered Persons receive no benefit whatsoever from Defendants-Appellees' websites." OB51. But Plaintiff misconceives the relevant inquiry. The question is not whether covered persons benefit in some form from a given disclosure; the question is whether "a law does not actually advance a compelling interest," *Williams-Yulee*, 575 U.S. at 449. Daniel's Law permits large swaths of government speech to remain disclosed—despite those disclosures raising the same concerns as, and often being the source of, Defendants' own disclosures. That is constitutionally untenable.

## III.   DANIEL'S LAW IS UNCONSTITUTIONALLY VAGUE

Daniel's Law is also unenforceable because it is unconstitutionally vague, leaving parties unable to know when the law applies and subject to harsh penalties and arbitrary enforcement.

Under the Constitution's fundamental due process guarantee, statutes must be written clearly enough to "enable the ordinary citizen to conform his or her conduct to the law," because forcing parties to guess what activity might be prohibited offends basic notions of fundamental fairness. *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999). A law is void for vagueness if it fails to provide sufficient notice of the activity prohibited, such that "regulated parties [do not] know what is required of them" or the law is otherwise susceptible to arbitrary enforcement. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012).

"When speech is involved," moreover, laws must "rigorous[ly] adher[e]" to these requirements. *Id.*; *see Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 781 (4th Cir. 2023). Vagueness in "content-based" speech regulations "raise[s] special First Amendment concerns because of [the] obvious chilling effect" of laws that force parties to guess at what kinds of speech are prohibited. *Reno v. ACLU*, 521 U.S. 844, 871-72 (1997); *see Edgar v. Haines*, 2 F.4th 298, 316 (4th Cir. 2021). For this reason, courts apply "a more stringent" vagueness test to speech restrictions than they do to run-of-the-mill non-speech regulations. *E.g.*, *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982).

Daniel's Law is littered with undefined and unclear terms that make it next-to-impossible for private entities to know what is required of them and how to avoid liability. For instance, it is unclear how a regulated party could ever know who is a

54

covered person. *See supra* at 29. Moreover, the statute includes ambiguous requirements that compound the difficulty of knowing which disclosures are prohibited, including what constitutes "expos[ure] … to harassment" or "risk of harm to life or property"; or what makes a phone number "personal" and/or "unpublished"; and, most confusingly, what it means to "disclose" information in the first place. W. Va. Code § 5A-8-24(e); *see supra* at 37-38. On top of that, any would-be speakers face the threat of at least $1,000 per violation if they guess wrong, leading to an "obvious chilling effect," *Reno*, 521 U.S. at 871-72.

Plaintiff claims that Defendants' vagueness challenge "did not belong" in the motion below. OB51. But the district court directed that Defendants' motions discuss "the facial constitutionality of West Virginia's Daniel's Law under the First and Fourteenth Amendments." JA118-119. Defendants' vagueness challenge to Daniel's Law, a state statute, arises under the Fourteenth Amendment. *See Carolina Youth Action Project*, 60 F.4th at 781 (citing Fourteenth Amendment with respect to void-for-vagueness challenge to state law).

Plaintiff also implies that the "reasonable person" standard requires no definition. OB52. But even if the term "reasonable person" is self-defining, the related statutory terms "harassment," "harm," "risk," and "exposure" are broad and undefined, inviting speculation and arbitrary guesswork.

Plaintiff next suggests that Defendants "could not[] question" that Daniel's Law "is primarily aimed at internet publication." OB53. But that argument actually confirms the statute's vagueness, as the statute says only that covered disclosures may be made on a medium "including, but not limited to, the Internet." W. Va. Code § 5A-8-24(c)(1). Plaintiff's imposition of the word "primarily" reinforces the statute's ambiguity. And Plaintiff's invocation (at 54) of Daniel's Law's provision for covered persons to "decide when and how to exercise their rights" has no bearing on the statute's intolerable vagueness with respect to private actors potentially liable under the law.

Although this Court (like the district court) need not reach this issue, Daniel's Law's unconstitutional vagueness provides an independent basis to affirm.

56

## CONCLUSION

This Court should affirm the decision below.

March 3, 2026

Robert C. Collins, III
LATHAM & WATKINS LLP
330 North Wabash Ave., Suite 2800
Chicago, IL 60611
(312) 876-7700

Patricia M. Bello
LEWIS BRISBOIS BISGAARD & SMITH
LLP
707 Virginia Street, East, Suite 1400
Charleston, WV 25301
(304) 553-0166

Respectfully submitted,

*/s/ Samir Deger-Sen*
Samir Deger-Sen*
Nikita Kansra
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-4619
samir.deger-sen@lw.com

\* Pursuant to Rule 25(a)(9) counsel
attests that all other parties on whose
behalf the filing is submitted concur
in the filing's contents.

Jennifer C. Archie
Ruth Hirsch
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Appellees (in No. 25-2124)*
*PeopleConnect, Inc.; Intelius LLC; Pubrec, LLC; The Control Group*
*Media Company, LLC; Instant Checkmate, LLC; Truthfinder, LLC*

*/s/ Michael Berry*
Michael Berry
Marcel S. Pratt
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 655-8500
berrym@ballardspahr.com

*/s/ Dwight M. Francis*
Dwight M. Francis
Aimee C. Oleson
SHEPPARD MULLIN RICHTER &
  HAMPTON, LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

57

David S. Givens
FLAHERTY, SENSABAUGH &
  BONASSO PLLC
1225 Market Street
P.O. Box 6545
Wheeling, WV 26003
(304) 230-6600

Anna Kaul
BALLARD SPAHR LLP
80 South 8th Street
2000 IDS Center
Minneapolis, MN 10019
(612) 371-3224

*Counsel for Appellee*
*(in No. 25-2121) Thomson Reuters*
*America Corporation*

Christopher L. Bauer
SHEPPARD MULLIN RICHTER &
  HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
cbauer@sheppardmullin.com

*Counsel for Appellee (in No. 25-2123)*
*Thryv, Inc.*

---

/s/ Natalie C. Schaefer
Natalie C. Schaefer
SHUMAN, MCCUSKEY & SLICER, PLLC
Post Office Box 3953
Charleston, WV 25339-3953
(304) 345-1400

Michael D. Dunham
SHUMAN, MCCUSKEY & SLICER, PLLC
116 South Stewart Street, 1st Floor
Winchester, VA 22601
(304) 486-4195

*Counsel for Appellee (in No. 25-2122)*
*Whitepages, Inc.*

---

/s/ Bruce M. Jacobs
Bruce M. Jacobs
SPILMAN THOMAS & BATTLE, PLLC
P.O. Box 273
Charleston, WV 25321-0273
(304) 340-3863
bjacobs@spilmanlaw.com

James A. Walls
SPILMAN THOMAS & BATTLE, PLLC
P.O. Box 615
Morgantown, WV 26507-0615
(304) 291-7947

*Counsel for Appellee (in No. 25-2125)*
*LexisNexis Risk Solutions, Inc.*

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees request oral argument in this case. This case presents important questions about the First Amendment's application to a novel state law. Defendants-Appellees believe that oral argument would aid the Court in its consideration of these issues.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)

Counsel for Appellees PeopleConnect, Inc.; Intelius LLC; Pubrec, LLC; The Control Group Media Company, LLC; Instant Checkmate, LLC; and Truthfinder, LLC hereby certify that:

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32(b).  The brief contains 12,973 words (as calculated by the Microsoft Word 365 word processing system used to prepare this brief), excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2.  This brief complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman style font.

Dated:  March 3, 2026

*s/ Samir Deger-Sen*
Samir Deger-Sen

*Counsel for Appellees (in No. 25-2124) PeopleConnect, Inc.; Intelius LLC; Pubrec, LLC; The Control Group Media Company, LLC; Instant Checkmate, LLC; Truthfinder, LLC*