NO. 25-2121(L)

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

MICHAEL JACKSON, on behalf of himself and all other similarly situated,

*Plaintiff-Appellant,*

v.

THOMSON REUTERS AMERICA CORPORATION,

*Defendant-Appellee.*

---

## BRIEF OF *AMICUS CURIAE* FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION IN SUPPORT OF APPELLEES AND AFFIRMANCE

---

On Appeal from the United States District Court for the
Northern District of West Virginia at Clarksburg
Civil Action No. 1:24-cv-00088
Hon. Michael F. Urbanski, Presiding

---

Ronald G. London
    *Counsel of Record*
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Suite 340
Washington, DC 20003
Tel:   (215) 717-3473
ronnie.london@fire.org

*Attorney for* Amicus Curiae

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-2121(L)      Caption: Michael Jackson v. Thomson Reuters America Corporation

Pursuant to FRAP 26.1 and Local Rule 26.1,

Foundation for Individual Rights and Expression

(name of party/amicus)

who is _____amicus curiae_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☐NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Ronald G. London _____    Date: ___March 10, 2026___

Counsel for: Foundation for Individual Rights and Expression _____

- ii -

[ Print to PDF for Filing ]

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT ................................................ i

TABLE OF AUTHORITIES ...................................................... iv

INTEREST OF AMICUS CURIAE ........................................ 1

INTRODUCTION ............................................................. 2

I.    Content-Based Statutes Like Daniel's Law Are Presumptively Unconstitutional and Warrant Strict Scrutiny. ............................ 5

   A.    Because Daniel's Law is content-based on its face, it must satisfy strict scrutiny. ................................................. 5

   B.    There is no privacy-based exception to the rule that content-based statutes warrant strict scrutiny...................... 7

II.   Daniel's Law restricts a sweeping range of protected speech at the First Amendment's core. .................................................... 12

CONCLUSION ............................................................... 17

CERTIFICATE OF COMPLIANCE ...................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Am. Ass'n of Pol. Consultants, Inc. v. FCC,*
923 F.3d 159 (4th Cir. 2019) ................................................................. 8

*Animal Legal Def. Fund v. Wasden,*
878 F.3d 1184 (9th Cir. 2018) ............................................................... 8

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
591 U.S. 610 (2020) ............................................................................. 8

*Brown v. Ent. Merchs. Ass'n,*
564 U.S. 786 (2011) ............................................................................. 3

*Cahaly v. Larosa,*
796 F.3d 399 (4th Cir. 2015) ............................................................... 8

*Cincinnati v. Discovery Network, Inc.,*
507 U.S. 410 (1993) ............................................................................. 7

*Connick v. Myers,*
461 U.S. 138 (1983) ............................................................................. 4

*Fla. Star v. B.J.F.,*
491 U.S. 524 (1989) ..................................................................... 11, 12

*Hill v. Colorado,*
530 U.S. 703 (2000) ............................................................................. 7

*IMDb.com Inc. v. Becerra,*
962 F.3d 1111 (9th Cir. 2020) .......................................... 8, 9, 10, 11, 12

*In re Nat'l Sec. Letter,*
33 F.4th 1058 (9th Cir. 2022) .............................................................. 6

*Jackson v. Whitepages, Inc.,*
798 F. Supp. 3d 583 (N.D.W. Va. 2025) ......................................... 5, 16

*Mills v. Alabama,*
384 U.S. 214 (1966) ........................................................................... 14

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ...................................................................... 12, 13

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992) ............................................................................. 9

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ................................................. 2, 3, 4, 5, 6, 7, 8, 12

*Schrader v. Dist. Att'y of York Cnty.*,
  74 F.4th 120 (3d Cir. 2023) ............................................................. 9, 11

*Smith v. Daily Mail Publ'g. Co.*,
  443 U.S. 97 (1979) .......................................................................... 11, 12

*Snyder v. Phelps*,
  562 U.S. 443 (2011) .................................................................... 4, 10, 16

*Soderberg v. Carrion*,
  999 F.3d 962 (4th Cir. 2021) ............................................................... 12

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) .............................................................................. 6

*Turner Broad. Sys., Inc. v. FCC*,
  512 U.S. 622 (1994) .............................................................................. 3

*United States v. Alvarez*,
  567 U.S. 709 (2012) ............................................................... 3, 9, 11, 12

*United States v. Lierman*,
  151 F.4th 530 (4th Cir. 2025) .............................................................. 6

*United States v. Playboy Ent. Grp., Inc.*,
  529 U.S. 803 (2000) ...................................................................... 3, 4, 13

*United States v. Stevens*,
  559 U.S. 460 (2010) ............................................................................ 12

**Statutes**

W. Va. Code § 5A-8-24(c)(1) ..................................................................... 2, 14

W. Va. Code § 5A-8-24(e) ...................................................................... 2, 5

**Other Authorities**

Christopher Damien,
*With Chief Mondary on leave, Desert Hot Springs officials vow
policy review of police cell phone use*, Desert Sun (May 3, 2019)........ 14

Colleen O'Dea,
*NJ Supreme Court rules against challenge to publishing
restrictions*, NJ Spotlight News (June 20, 2025) ................................. 13

Daralene Jones,
*2018 DUI traffic stop at center of lawsuit over officer's use of
personal cellphone to capture video*, WFTV.com (Oct. 6, 2021) .......... 14

Domenic Purdy,
*Gonzales Police officer pleads guilty to anonymously sending
harassing text messages*, WBRZ.com (June 3, 2024) .......................... 15

Justin Elliott et al.,
*Billionaire Harlan Crow Bought Property From Clarence
Thomas. The Justice Didn't Disclose the Deal*, ProPublica (Apr.
13, 2023) ................................................................................................ 13

Restatement (Second) of Torts § 652D (A.L.I. 1977) ............................. 16

## INTEREST OF *AMICUS CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan nonprofit that defends the individual rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended these rights nationwide through public advocacy, targeted litigation, and *amicus curiae* filings in cases that implicate First Amendment freedoms, without regard to the speakers' viewpoints, including in cases challenging government attempts to regulate speech in the name of personal safety or privacy. *See, e.g., Reges v. Cauce*, 162 F.4th 979 (9th Cir. 2025); *Stanford Daily Publ'g Corp. v. Rubio*, Civ. No. 25-cv-06618, 2026 WL 125241 (N.D. Cal. Jan. 16, 2026); *NetChoice, LLC v. Bonta*, 113 F.4th 1101 (9th Cir. 2024); *Volokh v. James*, 656 F. Supp. 3d 431 (S.D.N.Y. 2023).

FIRE has a strong interest in preserving the robust protection for freedom of expression secured by the Supreme Court's First Amendment jurisprudence. FIRE files this brief in support of Appellees and of

---

[1] No counsel for a party authored this brief in whole or in part. No person, other than *amicus*, its members, or its counsel contributed money intended to fund this brief's preparation or submission. *Amicus* sought consent to the filing of this brief. Appellees consented. Appellant took no position.

affirming the district court, which correctly applied strict scrutiny to West Virginia's "Daniel's Law" given the import of upholding the "strict categorical rules" that "keep[] the starch in the standards" that protect our freedom of speech. *Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 774 (1996) (Souter, J., concurring).

## INTRODUCTION

The district court correctly dismissed this action by applying strict scrutiny to Daniel's Law because the statute restricts "communicative content," rendering it "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). On its face, Daniel's Law threatens anyone with civil liability if they publish, display, or simply "disseminate by any means" a judicial or law enforcement official's home address or personal phone number. W. Va. Code § 5A-8-24(c)(1), (e). The Supreme Court prescribes strict scrutiny in such cases because the government cannot restrict *what* people say. *Reed*, 576 at 163. Few, if any, constitutional principles are as vital to freedom and self-government. That is why "the First Amendment, subject only to narrow and well-understood exceptions, does not countenance governmental control over

2

the content of messages expressed by private individuals." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641–42 (1994) (citations omitted).

To this end, the Supreme Court has instructed courts time and again they must apply strict scrutiny when reviewing laws targeting speech based on content. *E.g.*, *Reed*, 576 U.S. at 163. Strict scrutiny is a high bar for good reason—it is essential to guard against the "substantial and expansive threats to free expression posed by content-based restrictions." *United States v. Alvarez,* 567 U.S. 709, 717 (2012). Thus, "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011) (quoting *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000)). Daniel's Law is not one of those rare regulations.

Though Appellant Michael Jackson and others may insist Daniel's Law avoids strict scrutiny because it protects officials' privacy, they get the inquiry backwards. There is no privacy exception to the First Amendment's protection against content-based laws. If a statute restricts content on its face, as Daniel's Law does, strict scrutiny applies—full stop. *Reed*, 576 U.S. at 165. Only if "the Government prove[s] that the restriction furthers a compelling interest and is narrowly tailored to

3

achieve that interest" can regulations like Daniel's Law survive strict scrutiny. *Id.* at 171 (citation omitted).

But Daniel's Law is not narrowly tailored. Instead, it broadly endangers protected speech, including speech on matters of public concern, which "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)). From news reporting on a police officer using a personal phone to engage in misconduct, to citizens alerting their neighbors to law-breaking at a local judge's house, Daniel's Law targets speech at the heart of self-government. This extensive sweep over protected speech shows Daniel's Law is not the least restrictive means of meeting the government's interest in protecting privacy. *See Playboy Ent. Grp., Inc.*, 529 U.S. at 813 ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative.").

This appeal is an opportunity for the Court to keep the starch in our First Amendment standards. Protecting officials' personal privacy might be a worthy goal. But it cannot come at the cost of shrinking the

4

constitutional scrutiny essential to protecting free expression against content-based laws.

FIRE urges the Court to apply strict scrutiny and affirm.

## I. Content-Based Statutes Like Daniel's Law Are Presumptively Unconstitutional and Warrant Strict Scrutiny.

### A. Because Daniel's Law is content-based on its face, it must satisfy strict scrutiny.

Daniel's Law exemplifies the truism that "[s]ome facial distinctions based on a message are obvious" in "defining regulated speech by particular subject matter." *Reed*, 576 U.S. at 163. The statute singles out "disclosure," which it defines as everything from publication to posting, of "the home address or unpublished personal telephone number" of judicial and law enforcement officials, under the pain of civil damages. W. Va. Code § 5A-8-24(e). In all cases, Daniel's Law on its face targets *what* people can say or publish about a host of public officials. Or, as the district court rightly concluded, the statute "prohibits public discussion of an entire topic." *Jackson v. Whitepages, Inc.*, 798 F. Supp. 3d 583, 595 (N.D.W. Va. 2025).

It makes no constitutional difference, as Jackson argues, whether a content-based law regulates ideological messages or instead regulates

communicating facts. ECF 24, Jackson Br. 13. For one thing, Daniel's Law threatens speech beyond the mere disclosure of home addresses and phone numbers, from investigative journalism to concerned neighbors speaking out about misconduct. *See infra*, Section II. And even if Daniel's Law was as narrow as Jackson argues, it is still a content-based law subject to strict scrutiny: Regulating the disclosure of facts is precisely the targeting of "communicative content" that is "presumptively unconstitutional." *Reed*, 576 U.S. at 163; *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563–64 (2011) (holding a statute regulating disclosures of prescriber-identifying information was content-based); *In re Nat'l Sec. Letter*, 33 F.4th 1058, 1063, 1072 (9th Cir. 2022) (holding a federal statute preventing disclosure of the fact that the FBI "has sought or obtained access to information or records" through a national security letter was content-based).

In short, Daniel's Law "distinguishes lawful speech from unlawful based on what it says," rendering it content-based on its face and subject to strict scrutiny. *United States v. Lierman*, 151 F.4th 530, 540 (4th Cir. 2025). And strict scrutiny must apply "regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward

6

the ideas contained' in the regulated speech." *Reed*, 576 U.S. at 165 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). "The vice of content-based legislation … is not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes." *Hill v. Colorado*, 530 U.S. 703, 743 (2000) (Scalia, J., dissenting) (citation omitted).

Thus, strict scrutiny's high bar is necessary to ensure Daniel's Law does not punish speech government officials dislike. *Amicus* urges the Court to affirm the district court's application of strict scrutiny.

**B.    There is no privacy-based exception to the rule that content-based statutes warrant strict scrutiny.**

No matter the state's interest in maintaining the privacy of certain government officials, it does not exempt the content-based Daniel's Law from strict scrutiny. *See* ECF 24, Jackson Br. 15–25. The Supreme Court has "repeatedly considered whether a law is content neutral on its face *before* turning to the law's justification or purpose." *Reed*, 576 U.S. at 166 (citing decisions). The analysis is straightforward: If a law is "content

7

based on its face," it is "subject to strict scrutiny," regardless of the government's "motive" or "justification." *Id.*

To that end, this Court and others have routinely applied strict scrutiny when assessing the constitutionality of content-based speech regulations rooted in privacy interests. For instance, this Court has applied strict scrutiny when holding content-based statutes targeting robocalls unconstitutional, even though legislatures passed them in the name of protecting privacy. *E.g., Am. Ass'n of Pol. Consultants, Inc. v. FCC*, 923 F.3d 159, 167–68 (4th Cir. 2019), aff'd sub nom. *Barr v. Am. Ass'n of Pol. Consultants, Inc.,* 591 U.S. 610 (2020); *Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015). Likewise, the Ninth Circuit has applied strict scrutiny to invalidate content-based statutes resting on privacy interests, like a California statute prohibiting the website disclosure of entertainment professionals' names and birth dates, *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1121 (9th Cir. 2020), and an Idaho statute criminalizing false speech related to entry into agricultural facilities, *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018). And most recently, the Third Circuit applied strict scrutiny when assessing a Pennsylvania statute prohibiting release of information in

8

the state's child abuse database to unauthorized persons. *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 126–28 (3d Cir. 2023).

If the government has a privacy-based interest in maintaining Daniel's Law, it can assert that interest in attempting to satisfy strict scrutiny. But by no means does Daniel's Law avoid strict scrutiny just because it aims to protect privacy. *See, e.g.*, *IMDb.com*, 962 F.3d at 1123–25; *Schrader*, 74 F.4th at 126–28.

In essence, Jackson asks the Court to create a new "privacy" exception to First Amendment protection against content-based statutes. This Court should decline to do so. To start, Daniel's Law is not aimed at "the content of speech in" those "few limited areas" historically exempt from the First Amendment's reach, like obscenity, defamation, or true threats. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382–83 (1992). And the Supreme Court has resolutely refused to expand the handful of categorical content-based restrictions on speech "long familiar to the bar," like defamation and true threats. *Alvarez*, 567 U.S. at 717 (citation omitted).

Simply put, there is no "privacy" exception to First Amendment protection, historical or otherwise. The numerous decisions cited above

9

applying strict scrutiny to content-based laws rooted in privacy interests prove as much. What's more, Daniel's Law effectively prohibits a staggering array of speech on public issues, as detailed below. *See infra*, Section II. So not only does Daniel's Law come nowhere near one of the limited historical exceptions to First Amendment protections against content-based regulation, but it strikes at content at the First Amendment's core. *Snyder*, 562 U.S. at 451–52.

To that end, the Ninth Circuit in *IMDb.com* declined to "cordon off" speech from the First Amendment based on privacy concerns when scrutinizing a statute regulating disclosures of information, just like Daniel's Law does. 962 F.3d at 1124. There, the appeals court considered a First Amendment challenge to a law prohibiting certain websites from disclosing entertainment professionals' names and birthdates. Explaining that "neither this court, nor the Supreme Court, has held that content-based restrictions on public speech touching on private issues escape strict scrutiny," the Ninth Circuit rejected the government's reasoning that its privacy interest excepted the statute from strict scrutiny. *Id.* at 1123–25. Noting the "high bar for cordoning off new types of speech for diminished protection," the court concluded the government

10

failed to present the "persuasive evidence" permitting a privacy exception to strict scrutiny for a content-based statute. *Id.* at 1125.

This Court should hold the same here, especially given the Supreme Court's steadfast refusal to expand the few categories of speech states can regulate based on content. *Alvarez*, 567 U.S. at 717. Even more, there is no "persuasive evidence" that Daniel's Law targets the disclosure of facts that are only of a private concern. Rather, the statute sweeps much further. In fact, it prohibits even the disclosure of home addresses the government makes publicly available. Whatever "privacy interests" underpin Daniel's Law "fade once information already appears on the public record." *Schrader*, 74 F.4th at 127 (citation omitted) (cleaned up). Once the government makes private information public, "a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts." *Fla. Star v. B.J.F.*, 491 U.S. 524, 534–35 (1989).

Nor does Daniel's Law target only information the disclosing party unlawfully obtained—and it cannot punish disclosure of lawfully obtained information "absent a need to further a state interest of the highest order." *Smith v. Daily Mail Publ'g. Co.*, 443 U.S. 97, 103–04

11

(1979); *see also Bartnicki v. Vopper*, 532 U.S. 514, 529–30 (2001). Decisions like *Florida Star* and *Daily Mail*, then, underscore why all roads lead to strict scrutiny, despite what Jackson insists otherwise. *Compare* ECF 24, Jackson Br. 18 *with Soderberg v. Carrion*, 999 F.3d 962, 969 (4th Cir. 2021) (branding the *Daily Mail* standard as strict scrutiny).

True enough, "the courts have recognized some conflict between the First Amendment and privacy interests." *IMDb.com*, 962 at 1125. But when a state statute aiming to protect privacy interests is content-based on its face, it must satisfy strict scrutiny. *Id.* That rule follows the unequivocal holding of *Reed*. 576 U.S. at 167. And it guards against a "free-floating test for First Amendment coverage" that will only intensify the "substantial and expansive threats to free expression posed by content-based restrictions." *Alvarez*, 567 U.S. at 717 (quoting *United States v. Stevens*, 559 U.S. 460, 470 (2010)).

## II.    Daniel's Law restricts a sweeping range of protected speech at the First Amendment's core.

By targeting content about public officials, Daniel's Law threatens our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v.*

12

*Sullivan*, 376 U.S. 254, 270 (1964). The range of speech on matters of public concern the law captures makes clear it is far from the "least restrictive means for addressing a real problem," as required to satisfy strict scrutiny. *Playboy Ent. Grp.*, 529 U.S. at 827.

To start, the statute puts news reporting and investigative journalism in its crosshairs. News outlets routinely gather news and report on issues related to the home address or personal telephone number of judicial and law enforcement officials. For instance, ProPublica recently published an investigation over a residential real estate transaction between a Supreme Court justice and a billionaire.[2] As another example, a journalist in New Jersey detailed how a local police chief lives hours away from the people he is charged to serve and protect.[3]

---

[2] *E.g.*, Justin Elliott et al., *Billionaire Harlan Crow Bought Property From Clarence Thomas. The Justice Didn't Disclose the Deal*, ProPublica (Apr. 13, 2023), https://www.propublica.org/article/clarence-thomas-harlan-crow-real-estate-scotus.

[3] *E.g.,* Colleen O'Dea, *NJ Supreme Court rules against challenge to publishing restrictions*, NJ Spotlight News (June 20, 2025), https://www.njspotlightnews.org/2025/06/first-amendment-advocates-fear-nj-supreme-court-ruling-is-blow-to-watchdog-journalism-charlie-kratovil/.

And several outlets have informed the public about police officers using personal phones for a range of misconduct.[4]

Yet Daniel's Law imperils this vital journalism. It opens reporters to retaliatory lawsuits and civil liability simply for carrying out our "constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve." *Mills v. Alabama*, 384 U.S. 214, 219 (1966). That's especially so because the statute defines "disclosure" broadly, capturing anyone who "distribute[s]," "deliver[s]," "provide[s]," or "disseminate[s] by any means" covered information. W. Va. Code § 5A-8-24(c)(1). As a result, the statute even ensnares journalists who merely share a judge's home address within the newsroom, or sources who discuss a police officer's personal phone number with a reporter. Such a threat to press freedom

---

[4] *E.g.,* Daralene Jones, *2018 DUI traffic stop at center of lawsuit over officer's use of personal cellphone to capture video*, WFTV.com (Oct. 6, 2021), https://www.wftv.com/news/local/2018-dui-traffic-stop-center-lawsuit-over-officers-use-personal-cellphone-capture-video/KZYKTR2HLNAOLJ6AZ7IPW6RZIQ/; Christopher Damien, *With Chief Mondary on leave, Desert Hot Springs officials vow policy review of police cell phone use*, Desert Sun (May 3, 2019), https://www.desertsun.com/story/news/crime_courts/2019/05/03/chief-mondary-leave-desert-hot-springs-vows-review-cop-cell-phone-use/1094569001.

14

defies the First Amendment's guarantees and cannot satisfy strict scrutiny.

And Daniel's Law's threat to free expression stretches far beyond journalism. Consider a police officer sending citizens threatening text messages.[5] A citizen has a First Amendment right to post screenshots of the texts on a community watchdog Facebook group (perhaps warning others who receive threats from the same number) or send them to the authorities. But Daniel's Law forces that citizen into an impossible choice: Disclose the text messages and risk civil penalty, or self-censor.

One can imagine similar situations in which Daniel's Law chills citizens from exercising their First Amendment right to speak on matters of public concern. Suppose someone videotaped police arresting a local prosecutor at his home after a domestic violence call and posted it on YouTube. Or consider a citizen who complained to the county commission about drug-fueled parties at a local judge's neighboring home. No doubt, both speakers would be speaking out about public affairs, which sit "at

---

[5] *See* Domenic Purdy, *Gonzales Police officer pleads guilty to anonymously sending harassing text messages*, WBRZ.com (June 3, 2024), https://www.wbrz.com/news/gonzales-police-officer-pleads-guilty-to-anonymously-sending-harassing-text-messages/.

the heart of the First Amendment's protection." *Snyder*, 562 U.S. at 451–52 (citation omitted). Yet both would risk liability under Daniel's Law. Simply put, Daniel's Law will force citizens to self-censor, rather that inform their community about officials' wrongdoing.

In all cases, there are far less restrictive ways of protecting officials' privacy than chilling speech essential to self-government. For instance, Daniel's Law could target only disclosures of covered information that the government does not make available, and that a speaker otherwise obtains through independently unlawful means. Or it could require a constitutionally permissible *mens rea* requirement. But instead, Daniel's Law targets speakers even if they unknowingly disclose covered information. As the district court rightly held, that "burdens far more speech than is conceivably related to West Virginia's compelling interest." *Whitepages, Inc.*, 798 F. Supp. 3d at 610–11.

Consider, too, that common law privacy torts already provide remedies for invasions of privacy, while excluding speech on matters of public concern from liability—an element Daniel's Law lacks. *See* Restatement (Second) of Torts § 652D (A.L.I. 1977) (noting that the publicity of private matters tort does not extend to matters "of legitimate

16

concern to the public"). Those common-law torts highlight why the statute violates the First Amendment, contrary to Jackson's arguments. ECF 24, Jackson Br. 21.

In the end, protecting privacy is no excuse for punishing speech that is the backbone of American self-government and free debate. Daniel's Law cannot satisfy the strict scrutiny it warrants.

## CONCLUSION

For these reasons, *amicus curiae* FIRE urges the Court to affirm.

Dated: March 10, 2026

Respectfully,

/s/ *Ronald G. London*
Ronald G. London
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE,
Suite 340
Washington, DC 20003
Tel: (215) 717-3473
ronnie.london@fire.org

*Counsel for* Amicus Curiae
*Foundation for Individual*
*Rights and Expression*

17

# CERTIFICATE OF COMPLIANCE

Under Fed. R. App. P. 29(a)(5), I certify that, according to the word-counting function of Microsoft Word for Mac, this brief contains 3,136 words, including footnotes.

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using 14-point Century Schoolbook font.

Dated: March 10, 2026                     /s/ *Ronald G. London*
                                          Ronald G. London
                                          FOUNDATION FOR INDIVIDUAL
                                          RIGHTS AND EXPRESSION

18